**Affirmed as Modified and Opinion filed August 27, 2015.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-14-00172-CV

_____

### KATY SPRINGS & MANUFACTURING, INC., Appellant

### V.

### JOSEPH FAVALORA, Appellee

**On Appeal from the 133rd District Court
Harris County, Texas
Trial Court Cause No. 2011-15658**

## O P I N I O N

This is a personal-injury case involving a worker's compensation nonsubscriber. A jury found appellant Katy Springs & Manufacturing, Inc. liable for negligence and awarded appellee Joseph Favalora $779,627.02 in compensatory damages. Katy Springs appeals the judgment in eight main issues and a number of sub-issues. We modify the trial court's judgment to delete the $100,000 award for future mental anguish and affirm the judgment as modified.

# I.   SUMMARY FACTUAL & PROCEDURAL BACKGROUND

On October 5, 2010, Favalora was working by himself on a manufacturing line producing industrial springs at Katy Springs' facility in Katy, Texas. During his shift, a bundle of large-gauge wire used to make the springs jammed in a pay-off reel that was fabricated by employees at Katy Springs. As Favalora bent down to free the jammed wire, the wire began to escape through a three-inch gap at the top of the reel. The escaping wire hit Favalora in the chest, causing him to fall. Favalora started to feel pain in his chest and neck. He went to an urgent care facility and was later transferred to Memorial Hermann Katy Hospital where a doctor diagnosed him with a chest contusion, neck sprain, and cervical radiculopathy. Following the October 5, 2010 accident, Favalora endured long-term chronic neck pain and numbness in his arm. In 2012, he relocated to Louisiana and began consulting with Dr. Bradley Bartholomew, a neurosurgeon. Eventually, after exhausting conservative pain treatments, including epidural steroid injections and prescription pain medications, Dr. Bartholomew recommended spinal surgery. In March 2013, Favalora had the surgery, which fused his C3-4 and C5-6 vertebrae.

Favalora sued Katy Springs for negligence. The case went to trial, and the jury returned a verdict in favor of Favalora. The jury awarded Favalora $204,627.02 for past medical expenses; $25,000 for lost earning capacity in the past; $81,000 in past physical pain and suffering; $100,000 for future physical pain and suffering; $19,000 for past physical impairment; $100,000 for future physical impairment; $150,000 for past mental anguish; and $100,000 for future mental anguish. The judgment was signed on December 16, 2013. Katy Springs filed a motion for new trial, which was denied by the trial court in an order dated February 24, 2014. Katy Springs timely appealed. Katy Springs appeals the

2

judgment in eight main issues and a number of sub-issues, which we summarize here:

1. The evidence is legally and factually insufficient to sustain the jury's finding on negligence.

2. The evidence shows that Favalora was the sole cause of his injuries.

3. The evidence is (1) legally insufficient to sustain the jury's award for past medical expenses; (2) legally insufficient to sustain the jury's awards for past and future mental anguish; and (3) legally and factually insufficient to sustain the jury's awards for past and future physical impairment.

4. The trial court erred in admitting evidence of Favalora's damages because (1) the admission of the full amounts of Favalora's medical bills rather than the amounts received by the providers from a third party violated Civil Practice and Remedies Code section 41.0105; (2) the affidavits do not comply with Civil Practice and Remedies Code section 18.001; and (3) the trial court should have allowed additional pretrial discovery on the damage amounts. Katy Springs further contends (4) the trial court allowed Favalora to submit duplicative evidence of medical bills; and (5) the trial court erred in striking Katy Springs' counter-affidavit.

5. Favalora's counsel engaged in improper jury argument that was incurable.

6. The trial court erred in excluding evidence of Favalora's prior illegal drug use.

7. The jury charge was "fraught with errors of inclusion and exclusion."

8. The trial court erred in denying Katy Springs' motion to reopen evidence and motion for new trial.

We consider each issue and the related sub-issues in turn.

## II. SUFFICIENCY OF THE EVIDENCE TO SUPPORT JURY'S FINDING OF NEGLIGENCE

In its first issue Katy Springs contends the evidence is legally and factually

insufficient to support the jury's finding of negligence. Katy Springs specifically challenges the jury's findings on the duty, breach, and causation elements.

## A.    Standard of Review

When an appellant challenges the legal sufficiency of the evidence on a matter for which he did not have the burden of proof, he must demonstrate on appeal that there is no evidence to support the adverse findings. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983); *McCullough v. Scarbrough, Medlin & Assocs., Inc.*, 435 S.W.3d 871, 892 (Tex. App.—Dallas 2014, pet. denied). Under a no-evidence point, we consider the evidence in the light most favorable to the verdict, indulging every reasonable inference in support. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We are mindful in our review that jurors are the sole judges of the credibility of the witnesses and the weight to be given their testimony. *Id.* at 819. A legal sufficiency challenge fails if there is more than a scintilla of evidence to support the judgment. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller*, 168 S.W.3d at 827. Evidence that does no more than create a surmise or suspicion is insufficient to rise to the level of a scintilla and, in legal effect, is no evidence. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004).

When we evaluate a factual sufficiency challenge, we must consider and weigh all the evidence; we can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam). If we affirm a challenged jury verdict as being supported by factually sufficient evidence, we need not detail all the evidence in support of

the verdict. *In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 211 (Tex. 2009) (orig. proceeding). We must not substitute our judgment for that of the jury and should remain cognizant that the jury is the sole judge of witness credibility. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

## B. Duty & Breach

In order to establish negligence, the plaintiff must produce evidence to establish the existence of a duty and a breach of that duty. *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001). The existence of a duty is a question of law. *Nat'l Convenience Stores, Inc. v. Matherne*, 987 S.W.2d 145, 149 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

Under Texas law, an employer has a well-established non-delegable and continuous duty to furnish reasonably safe instrumentalities with which its employees are to work. *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 754 (Tex. 1975), *overruled on other grounds*, *Parker v. Highland Park, Inc.*, 565 S.W.2d 512 (Tex. 1978); *see Austin v. Kroger Tex., L.P.*, — S.W.3d —, No. 14-0216, 2015 WL 3641066, at *16 (Tex. Jun. 12, 2015). Therefore, Katy Springs, as Favalora's employer, had a duty to furnish Favalora with reasonably safe machinery.

To establish a breach of this duty, Favalora had to prove either that Katy Springs did something an ordinarily prudent employer exercising ordinary care would not have done under the circumstances, or that Katy Springs did not do that which an ordinarily prudent employer would have done in the exercise of ordinary care. *Aguirre v. Vasquez*, 225 S.W.3d 744, 757 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Whether a defendant breached its duty is a question of fact. *Id.*

The evidence is legally and factually sufficient to support the jury's finding that Katy Springs breached its duty to furnish Favalora with reasonably safe

5

machinery. At the time of the accident, Katy Springs owned two pay-off reels—the company-made reel and a "yellow reel" made by Spectral Systems. The company-made reel lacked two safety mechanisms that the yellow reel had: (1) a safety brake intended to prevent creeping of the basket when the machine is stopped, and (2) containment arms designed to allow wire to escape only from a particular area, known as the "escapement area." The steel support arms of the company-made reel had deep gouges that trapped the wire and caused it to build tension with each revolution. Instead of containment arms to prevent wire from escaping, the top of the company-made reel had a three-inch gap that allowed the tensioned wire to escape in a 360-degree pattern.

The jury heard testimony from several of Katy Springs' employees. These employees generally agreed that Favalora should "run away" if the wire started escaping from the three-inch gap after having become trapped by the gouges. The employees confirmed that wire had escaped from the reel in the past. Favalora testified that wire escaped from the company-made reel twice during his shift on October 4, 2010. Despite these concerns, Katy Springs made no effort to repair or change the design of the company-made reel.

Based on the testimony and evidence, reasonable jurors could have concluded that Katy Springs did not act as a reasonable employer when it allowed Favalora to work on the company-made reel that lacked any safety features and was recognized as being unsafe by several Katy Springs employees. The evidence furnishes some reasonable basis for fair-minded people to reach the conclusion that Katy Springs breached its duty to provide Favalora with reasonably safe machinery. Furthermore, based on our review of the entire record, the evidence supporting the jury's finding that Katy Springs breached its duty is not so weak, and the evidence to the contrary is not so overwhelming, that the finding should be

set aside. Therefore, the evidence was legally and factually sufficient to support the jury's finding that Katy Springs breached its duty to provide Favalora with reasonably safe machinery. *See Pilgrim's Pride Corp. v. Burnett*, No 12-10-00037-CV, 2012 WL 381714, at *13 (Tex. App.—Tyler Feb. 3, 2012, no pet.) (mem. op.); *LMC Complete Auto., Inc. v. Burke*, 229 S.W.3d 469, 477 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

## C.    Proximate Cause

A plaintiff must prove that the defendant's negligence was the proximate cause of his injuries. *Ambrosio v. Carter's Shooting Ctr., Inc.*, 20 S.W.3d 262, 265 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). To establish proximate cause, the plaintiff must prove foreseeability and cause in fact. *Id.* To establish foreseeability, the plaintiff must show that the defendant should have anticipated the dangers that its negligent act or omission created for others. *Id.* Foreseeability requires only that the general danger, not the exact sequence of events that produced the harm, be foreseeable. *Id.*

The test for cause in fact is whether the negligent act or omission was a substantial factor in bringing about the injury, without which the harm would not have occurred. *Id.* at 266. The plaintiff must prove cause in fact with evidence of probative force. *Id.* Cause in fact is not shown if the defendant's negligence did no more than furnish a condition that made the injury possible. *Id.* Instead, the evidence must show that the negligence was the proximate, not the remote, cause of the injuries and justify the conclusion that the injury was the natural probable result. *Id.*

Generally, the issue of proximate cause is a question of fact. *Id.* It can be a question of law in potentially two situations: (1) when the evidence is without material dispute and where only one reasonable inference may be drawn, and (2)

7

when the relationship between the plaintiff's injuries and the defendant's negligence is attenuated or remote. *Id.* Both causation elements can be established by direct or circumstantial evidence. *McClure v. Allied Stores of Tex., Inc.*, 608 S.W.2d 901, 903 (Tex. 1980).

The cause-in-fact element is satisfied in this case. Katy Springs built the company-made reel from which the wire escaped. The wire escaped because of the gouges in the support arms, which trapped the wire and allowed it to build tension, and the three-inch gap at the top of the reel, which allowed the tensioned wire to escape the confines of the company-made reel. When the wire escaped on October 5, 2010, it impacted Favalora and caused him to fall. The jury could have concluded from this evidence that Katy Springs' failure to provide Favalora with reasonably safe machinery was a substantial factor in his fall, one without which his fall would not have occurred. *See, e.g.*, *Nw. Mall, Inc. v. Lubri-Lon Int'l, Inc.*, 681 S.W.2d 797, 803 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

The evidence also supports a conclusion that Favalora's injuries were foreseeable. Katy Springs was aware that the company-made reel posed a safety hazard. The company's training program included the instruction to "run away" if the wire began to escape from the company-made reel. The company-made reel had deep gouges that caused the wire to build tension during operation. An employee testified that wire had escaped from the gap on at least two prior occasions. Favalora testified that wire had escaped twice since he started working at Katy Springs. The jury could have concluded from this evidence that Katy Springs should have anticipated the dangers that its company-made reel posed. *See, e.g.*, *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 550 (Tex. 1985) (evidence that prior violent crimes had occurred at apartment complex raised fact issue on foreseeability of criminal activity); *Rosas v. Buddies Food Store*, 518 S.W.2d 534,

538 (Tex. 1975) (harm was foreseeable in slip-and-fall case when evidence showed that similar incidents had occurred in the past and defendant's store manager was continually trying to fix problem of water accumulation at the entrance); *Pipgras v. Hart*, 832 S.W.2d 360, 364 (Tex. App.—Fort Worth 1992, writ denied); *Lubri-Lon*, 681 S.W.2d at 803.

To the extent Katy Springs argues that expert testimony was necessary to establish causation, we disagree. "[N]on-expert evidence alone is sufficient to support a finding of causation in limited circumstances where both the occurrence and conditions complained of are such that the general experience and common sense of laypersons are sufficient to evaluate the conditions and whether they were probably caused by the occurrence." *Guevara v. Ferrer*, 247 S.W.3d 662, 668 (Tex. 2007); *see also Kemp v. Havens*, No. 14-05-00060-CV, 2006 WL 1140319, at *3 (Tex. App.—Houston [14th Dist.] Apr. 27, 2006, no pet.) (mem. op.). Here, prior to the accident, Favalora was able to do manual labor. He was able to participate in athletic endeavors, such as volleyball, swimming, and working out. He was essentially pain free. After the accident he suffered excruciating pain and had to undergo spinal surgery that fused several of his vertebrae. Dr. Bartholomew, Favalora's neurosurgeon, stated that the surgery would permanently affect Favalora's ability to participate in certain physical activities. Favalora's mobility would be permanently limited. On this record, the jury could have concluded without expert testimony that the injuries Favalora suffered were caused by Katy Springs' negligence. *See Guevara*, 247 S.W.3d at 669; *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 732 (Tex. 1984).

Moreover, contrary to Katy Springs' assertions, the jury's finding on causation is supported by expert medical evidence. Dr. Bartholomew testified by video deposition. During his testimony the following exchange occurred:

9

[Favalora's counsel]: Do you believe that Joseph [Favalora], based on what he's told you, was injured at that time?

[Dr. Bartholomew]: Yes, sir.

[Favalora's counsel]: Based on reasonable medical probability, what is your opinion on what injuries Joseph sustained - - injuries or conditions as a result of that incident [at Katy Springs]?

. . .

[Dr. Bartholomew]: As far as the cervical spine, I think he had an aggravation of a preexisting condition in his neck which caused it to become symptomatic.

This expert testimony is legally sufficient to support the trial court's judgment. *See, e.g.*, *Wal-Mart Stores Tex., LP v. Crosby*, 295 S.W.3d 346, 352–53 (Tex. App.—Dallas 2009, pet. denied) (doctor's testimony that defendant's negligence resulted in an aggravation of a preexisting condition was legally sufficient to support the trial court's findings on causation).

Katy Springs also emphasizes that Dr. Bartholomew characterized Favalora's injuries as a worsening of a preexisting condition. It is axiomatic that a tortfeasor takes a plaintiff as he finds him. *Coates v. Whittington*, 758 S.W.2d 749, 752 (Tex. 1988). If a latent condition does not cause pain or suffering, but that condition plus an injury caused such pain, then the injury, and not the latent condition, is the proximate cause. *Thompson v. Quarles*, 297 S.W.2d 321, 329 (Tex. Civ. App.—Galveston 1956, writ ref'd n.r.e.); *see City of Hous. v. Celaya*, 390 S.W.2d 542, 546 (Tex. Civ. App.—Houston 1965, writ ref'd n.r.e.). Here, as a result of a car accident several years before the accident at Katy Springs, Favalora suffered trauma to his spine that required surgery to fuse his C4-5 vertebrae. Favalora testified that it took a long time to recover from the surgery. However, the evidence indicates that he had in fact recovered. In the time leading up to the incident, Favalora was able to work out and exercise. He taught swim lessons. He

played volleyball. He worked for his now ex-girlfriend's father building pools—a manual-labor job that required heavy lifting. He testified that he was essentially pain free at the time of the accident at Katy Springs. The jury could have found from this evidence that Favalora's prior injury was a latent condition that did not cause him pain or suffering at the time of the accident. Therefore, the jury could have concluded that the injury, and not the preexisting condition, was the proximate cause of Favalora's harm. *See Thompson*, 297 S.W.2d at 329.[1]

In sum, the evidence of causation furnishes some reasonable basis for fair-minded people to reach the conclusion that Katy Springs' negligence proximately caused Favalora's injuries. The evidence supporting the jury's finding that Favalora's injury was caused by Katy Springs' negligence is not so weak, and the evidence to the contrary is not so overwhelming, that the finding should be set aside. Therefore, the evidence was legally and factually sufficient to support the jury's finding that Katy Springs' breach proximately caused Favalora's injuries.

## III. WHETHER FAVALORA'S CONDUCT WAS THE SOLE CAUSE OF HIS INJURIES

In its second issue, Katy Springs contends that Favalora was the sole cause of his injuries. It asserts that had Favalora turned the lathe off before approaching the reel, the incident would not have happened. Katy Springs further argues that Favalora's testimony was conflicting on this issue.

---

[1] To the extent Katy Springs' argument has any bearing on the jury's award for past medical expenses, the jury was instructed: "Do not include any amount for any condition that existed before the occurrence in question, except to the extent, if any, that such other condition was aggravated by any injuries that resulted from the occurrence in question." The jury is presumed to have followed the court's instructions. *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 862 (Tex. 2009). Katy Springs did not argue and did not point to any evidence in the record suggesting that the jury did not follow the instruction. Therefore, we presume the jury took Favalora's prior injury into account when it awarded damages for past medical expenses.

In an action by an employee against a nonsubscriber employer, "it is not a defense that: (1) the employee was guilty of contributory negligence; (2) the employee assumed the risk of injury or death; or (3) the injury or death was caused by the negligence of a fellow employee." Tex. Lab. Code Ann. § 406.033(a) (West 2015). Therefore, it does not matter if the plaintiff was negligent or helped cause his own injury, unless his negligence was the sole cause of the injury. *Hall v. Timmons*, 987 S.W.2d 248, 254–55 (Tex. App.—Beaumont 1999, no pet.).

It is the province of the jury to resolve the conflicts in the evidence. *City of Keller*, 168 S.W.3d at 820. When pressed by Katy Springs' counsel, Favalora made clear that he did in fact turn the lathe off before he approached the reel. The jury could have believed Favalora's testimony and concluded that he was not a cause, let alone the sole cause, of his injuries. Even if the jury did not believe that Favalora turned the lathe off, the fact that this allegedly negligent act may have contributed to Favalora's injury does not avail Katy Springs. As discussed above, the evidence indicates that Katy Springs bore at least some responsibility for the incident—it knew of the potential hazard, it assigned a new employee to work on the production line with unsafe machinery, and its failure to provide reasonably safe machinery caused Favalora harm. At most, the evidence pointed out by Katy Springs shows Favalora was guilty of contributory negligence, which is not a defense available to nonsubscribers. *See* Tex. Lab. Code Ann. § 406.033(a). We overrule Katy Springs' second issue.

## IV.   SUFFICIENCY OF THE EVIDENCE TO SUPPORT JURY'S DAMAGE AWARDS

In its third issue, Katy Springs challenges the sufficiency of the evidence to support the jury's award of damages. In three sub-issues, Katy Springs contends:

(1)   the evidence is legally insufficient to justify the award for past medical expenses;

(2) the evidence is legally insufficient to justify the award for past and future mental anguish; and

(3) the evidence is legally and factually insufficient to justify the award for past and future physical impairment.

We consider each sub-issue in turn.

## A.    Past Medical Expenses

In its first sub-issue, Katy Springs argues the evidence supporting the jury's award of past medical expenses is legally insufficient. Katy Springs' argument focuses on the existence of a causal nexus between the event sued upon and the plaintiff's injuries. Katy Springs claims that the only evidence of a compensable injury consists of the medical records submitted by Favalora. According to Katy Springs, the medical records are no substitute for expert testimony on causation because laymen lack the requisite knowledge to understand the intricacies of neck injuries and surgeries. Katy Springs does not claim on appeal that the medical expenses were not reasonable and necessary, and, except to the extent Katy Springs raises an issue regarding the erroneous admission of duplicative medical bills (an issue we consider in Section V.D below), it has not challenged the amount the jury awarded for past medical expenses. We therefore consider only whether a causal nexus existed between the event sued upon and Favalora's injuries.

A plaintiff can recover only for injuries caused by the event made the basis of suit. *Texarkana Mem'l Hosp., Inc. v. Murdock*, 946 S.W.2d 836, 839–40 (Tex. 1997). This causal nexus inquiry is "strictly referable to the damages portion of the plaintiff's action." *Morgan*, 675 S.W.2d at 732. "Even if the defendant's liability has been established, proof of this causal nexus is necessary to ascertain the amount of damages to which the plaintiff is entitled." *Id.* The causal nexus must be shown by competent evidence. *Id.* Lay testimony is generally adequate to prove causation when general experience and common sense will enable a layman to

13

determine, with reasonable probability, the causal relationship between the event and the condition. *Id.* at 733. Lay testimony establishing a sequence of events providing a strong, logically traceable connection between the event and the condition is sufficient proof of causation. *Id.*

Applying these principles, we conclude there is some evidence to support the jury's award. The evidence shows that Favalora was in good health prior to beginning his employment at Katy Springs. Favalora was able to do manual labor. He was able to participate in athletic endeavors, such as volleyball, swimming, and working out. He was essentially pain free. After several weeks of working at Katy Springs, Favalora's supervisors assigned him to work on a production line with the company-made reel. During Favalora's shift, wire escaped from the company-made reel at a high velocity and struck Favalora in the chest. After the accident, Favalora suffered excruciating pain and had to undergo spinal surgery that fused several of his vertebrae. Dr. Bartholomew stated that the fusion surgery would permanently affect Favalora's ability to participate in certain physical activities and that Favalora's mobility would be permanently limited.

This evidence establishes a sequence of events from which the trier of fact may infer that the wire escaping from the company-made reel caused Favalora to suffer injury. And, as discussed in Section II.C above, there is ample evidence supporting the jury's finding that Katy Springs' negligence aggravated Favalora's earlier injuries and caused him additional injuries. *See Crosby*, 295 S.W.3d at 353. Therefore, we conclude there is some evidence in the record to support the trial court's award of damages for past medical expenses. *See Morgan*, 675 S.W.2d at 733. We overrule this sub-issue.

## B.    Past and Future Mental Anguish

In the second sub-issue, Katy Springs contends the evidence is legally

14

insufficient to support the jury's award for past and future mental anguish. Question 2 of the trial court's charge asked what sum of money would fairly and reasonably compensate Favalora for his injures, if any, that resulted from the occurrence in question. For mental anguish sustained in the past, the jury's answer was $150,000. For future mental anguish, the jury awarded Favalora $100,000.

## 1.    *Applicable Law*

Under Texas law, mental anguish damages are recoverable in virtually all personal-injury actions, including negligence actions. *City of Tyler v. Likes*, 962 S.W.2d 489, 495 (Tex. 1997). However, even when an occurrence is of the type for which mental anguish damages are recoverable, evidence of the nature, duration, and severity of the mental anguish is required. *Hancock v. Variyam*, 400 S.W.3d 59, 68 (Tex. 2013). An award of mental anguish damages will survive a legal sufficiency challenge when the plaintiff introduces direct evidence of the nature, duration, and severity of his mental anguish, thus establishing a substantial disruption in the plaintiff's routine. *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 797 (Tex. 2006); *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995). The absence of direct evidence, especially when it can be supplied or procured by the plaintiff, justifies close judicial scrutiny of other evidence on this element of damages. *Woodruff*, 901 S.W.2d at 444. In the absence of direct evidence, we apply traditional "no evidence" standards to determine whether the record "reveals any evidence of 'a high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or anger' to support any award of damages." *Id.* In sum, "mental anguish is only compensable if it causes a substantial disruption in daily routine or a high degree of mental pain and distress." *Hancock*, 400 S.W.3d at 68 (internal quotation and editorial marks omitted).

Direct evidence can take the form of the claimant's own testimony or that of

a third party or expert witness. *Anderson v. Long*, 118 S.W.3d 806, 811 (Tex. App.—Fort Worth 2003, no pet.). Mental anguish can be established through witness testimony explaining how the injured party felt and how the injured party's life was disrupted. *See Minn. Life Ins. Co. v. Vasquez*, 133 S.W.3d 320, 324 (Tex. App.—Corpus Christi 2004), *rev'd on other grounds*, 192 S.W.3d 774 (Tex. 2006). However, "[s]imply because a [witness] says [the plaintiff] suffered mental anguish does not constitute evidence of the nature, duration, and severity of any mental anguish that is sufficient to show a substantial disruption of one's daily routine." *Gunn Infiniti, Inc. v. O'Byrne*, 996 S.W.2d 854, 861 (Tex. 1999).

Mental anguish includes the mental sensation of pain resulting from such emotions as grief, severe disappointment, indignation, wounded pride, shame, despair, and public humiliation. *Woodruff*, 901 S.W.2d at 444; *Tex. Mut. Ins. Co. v. Morris*, 287 S.W.3d 401, 425 (Tex. App.—Houston [14th Dist.] 2009), *rev'd on other grounds*, 383 S.W.3d 146 (Tex. 2012).

> Recovery is warranted in such cases where the plaintiff's mental pain has risen to such a level that it has rendered him or her incapable of dealing with certain everyday activities. For instance, as a result of the mental pain, the plaintiff suffers from a myriad of negative emotions; some of these emotions may manifest themselves in such a way as to make it difficult for the plaintiff to eat, sleep, work, socially interact, or carry on any other activity which, until the time of the alleged injury, he or she could accomplish on a day-to-day basis without difficulty.

*Dillard Dep't Store, Inc. v. Silva*, 106 S.W.3d 789, 800 (Tex. App.—Texarkana 2003) (internal citations omitted), *aff'd as modified*, 148 S.W.3d 370 (Tex. 2004). There are no magic words to establish mental anguish; rather, courts can look at the totality of the circumstances, as well as the words used. *Comstock Silversmiths, Inc. v. Carey*, 894 S.W.2d 56, 58 (Tex. App.—San Antonio 1995, no writ).

16

A jury cannot automatically infer mental anguish once *any* physical injury is sustained. *Ontiveroas v. Lozano*, No. 14-05-00294-CV, 2006 WL 1140374, at *2 (Tex. App.—Houston [14th Dist.] Apr. 29, 2006, no pet.) (mem. op.); *see Gibbins v. Berlin*, 162 S.W.3d 335, 344 (Tex. App.—Fort Worth 2005, no pet.). "There must, instead, be specific evidence upon which an award for mental anguish may be upheld." *Ontiveroas*, 2006 WL 1140374, at *2; *see also id.* at *2, n.4 (rejecting as obiter dictum assertion from *Kingham Messenger & Delivery Serv., Inc. v. Daniels*, 435 S.W.2d 270, 273 (Tex. Civ. App.—Houston [14th Dist.] 1968, no writ), that "[m]ental anguish will be implied from illness, or injuries, accompanied by physical pain, and it may arise from a sense of discomfort or inconvenience."). Although the fact of a physical injury does not alone support an award for mental anguish damages, we can consider the traumatic nature of an injury as a factor in deciding whether the award is supported by the evidence. *See, e.g.*, *Finley v. P.G.*, 428 S.W.3d 229, 236–37 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *SunBridge Healthcare Corp. v. Penny*, 160 S.W.3d 230, 251–52 (Tex. App.—Texarkana 2005, no pet.).

To support an award for future mental anguish, a plaintiff must demonstrate a reasonable probability that he would suffer compensable mental anguish in the future. *Adams v. YMCA of San Antonio*, 265 S.W.3d 915, 917 (Tex. 2008). To meet the reasonable probability rule, a plaintiff must (1) present evidence that, in reasonable probability, he will suffer damages in the future and (2) prove the probable reasonable amount of the future damages. *N.N. v. Inst. for Rehab. & Research*, 234 S.W.3d 1, 10 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

## 2.    *Evidence Related to Favalora's Mental Anguish*

As an initial matter, our review of the evidence is limited. Because the jury provided separate awards for physical pain and suffering, physical impairment, and

mental anguish, evidence related to Favalora's physical pain and suffering and physical impairment is not relevant to the jury's award of mental anguish. *See, e.g., Bowman v. Patel*, No. 01-10-00811-CV, 2012 WL 524428, at *2 (Tex. App.—Houston [1st Dist.] Feb. 16, 2012, no pet.) (mem. op.); *Rice Food Mkts., Inc. v. Williams*, 47 S.W.3d 734, 739 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (where jury made separate awards for pain and mental anguish, evidence of plaintiff's pain was not relevant to the defendant's challenge of the award for mental anguish).

Favalora testified regarding the personal struggles he faced after the injury. Many of these struggles were associated with the financial effect of being physically unable to work and incurring medical expenses. In response to a question about his experiences during the first few weeks after the accident, Favalora stated:

> I'm not able to do anything. . . . I didn't leave my apartment. I didn't do anything. First of all, I wasn't making any money, so I was slowly losing everything I owned by the day. Starts off slow and you sell a piece of furniture here and there. I sold my car. You know, eventually you get to the point where you're going to Plato's Closet selling your clothes just to feed yourself and then eventually I lost my apartment.

He further testified:

> I was living with my aunt. Thank God she was there to take me in because at this point several months after the accident, I basically lost everything. I think I touched on it earlier, I had to sell my car. I had to - - I slowly started selling off pieces of my furniture, my TVs, all that kind of stuff. Eventually I was literally left with a couch and a small TV in my living room. And I could no longer afford to pay the rent.

After he relocated to Louisiana, Favalora started consulting with Dr. Bartholomew. It became apparent to Favalora that he might have to have another surgery. When discussing this possibility at trial, Favalora stated, "I was not happy about it." In

response to a question about his outlook when he started visiting Dr. Bartholomew, Favalora stated:

> Well, I already knew I needed surgery. So at this point I was willing - - I had lost the job at G-2 [Partners], lost my apartment once again and lost all of my belongings. At that point I really looked at the surgery in a different way that it was now to me more something that I had to do to be able to get on with my life. Because it was just becoming like a detour, like lingering. And the pain wasn't going away, all of the alternative treatments had failed.

Katie Vollmer, Favalora's then-girlfriend, also testified about Favalora's emotional state. Vollmer described Favalora's mental state prior to the accident as "always smiling" and "always happy." He was never stressed out even when the couple had financial problems. Favalora was someone she could go to with a problem. After the accident, however, Favalora was "not in a good place" emotionally. Vollmer described Favalora as "quiet and sad" and "not himself." Vollmer noted that "it was so unlike him to just lay [sic] down or sit down." "He couldn't get up and do the things he used to do, and I think that really got to him."

On the subject of Favalora's decision to have surgery, Vollmer testified that Favalora was "very optimistic" about the surgery. He was "ready to just feel better." And after the surgery, "he was still, I mean, very optimistic about, you know, the outcome and hoping, you know, it will finally make him feel better." Vollmer noted that Favalora was improving emotionally after the surgery. "He just seems like he's more up and going and ready to go do things." He was "getting back to himself, you know. He wants to move back here [to the Houston area] and finish school, and he just seems to joke around more and just has more life about him, you know."

In contrast to Vollmer's relatively optimistic perspective of Favalora's mental state, Dr. Bartholomew described Favalora as depressed and recommended

19

that Favalora seek psychiatric treatment. Responding to a question about how Favalora has done since the fusion surgery, Dr. Bartholomew stated, "I recommend - - physical therapy is common after a surgery, psychiatric because he's obviously depressed. And, unfortunately, he's not done very well. He's had continuing neck pain and getting very depressed with it." Dr. Bartholomew continued:

> He's depressed, obviously depressed. And we know that pain and depression go hand in hand. And the longer people have pain, the more likely they are to be depressed and the less likely they are to recover without some treatment for their depression.

Explaining how he knew Favalora was depressed, Dr. Bartholomew stated, "I think he even cried in the office. I mean, he tells me he's depressed. You can just look at him and talk to him and - - I'm pretty sure he cried in the office." Later in his testimony, the doctor added, "Yeah. I noted in my note of May 30th, 2013, 'Even almost crying in the office.'" Doctor Bartholomew explained that depression is common for people experiencing chronic pain. Discussing Favalora's future prognosis, Doctor Bartholomew testified:

> I think we need to get him, as I recommended, in physical therapy and psychiatric treatment, otherwise he's going to have a miserable future. He's already developed depression, basically crying in the office. He's told me he's been to the emergency room, not because he had an increase in his pain, just he couldn't deal with it [the pain], so tired of living with it [the pain]. So I think that, you know, he's going to become a long-term chronic pain patient. And especially with a psychological overlay from the depression, it's not a very bright future. That's why we need to get him into [physical] therapy and get him to a psychiatrist.

### 3. *Analysis*

With regard to past mental anguish damages, the evidence does show that, as a result of the accident, Favalora experienced some level of mental pain separate and apart from the physical pain and physical impairment. Whereas before the

accident, Favalora was "always smiling" and "always happy," after the accident, he was "quiet and sad" and "very depressed." This evidence shows that Favalora's attitude changed after the incident. Favalora also experienced relationship and financial struggles after the accident. He and his girlfriend broke up. He was compelled to move in with an aunt because he could no longer pay his bills. He ultimately had to return to Louisiana as a result of the financial strain. The jury could have inferred from Favalora's attitudinal changes and the attendant hardships that Favalora had suffered a high degree of mental pain and distress beyond mere worry, vexation, embarrassment, or anger. Therefore, the evidence is legally sufficient to support the jury's finding of past mental anguish.

With regard to future mental anguish, the evidence does not demonstrate a reasonable probability that Favalora will suffer compensable mental anguish in the future. The severity of Favalora's injury and the evidence of his mental pain simply do not rise to the level of the severity of the injury and the evidence propounded in other personal-injury cases. For instance, in *Fifth Club*, the plaintiff had been severely beaten by a security guard at a club. 196 S.W.3d at 790. He suffered a fractured skull when the guard slammed his head against a concrete wall and struck him several times. *Id.* The plaintiff and his wife testified that he continued to be depressed, humiliated, non-communicative, unable to sleep, and angry. *Id.* at 797. He continued to have headaches, and his daily activities and relationships with his wife and daughter continued to be detrimentally affected nearly two years after the beating. *Id.* The plaintiff also presented evidence of the severity of the intentional beating, including significant injuries to his head and body, loss of consciousness, and multiple visits to the hospital. *Id.* This evidence was legally sufficient to support an award for future mental anguish damages because it showed the nature of the plaintiff's mental anguish, its lasting duration,

and the severity of his injuries. *Id.* at 797–98.[2]

In contrast, the only evidence in the record concerning Favalora's future mental anguish—separate and apart from the evidence related to Favalora's pain and suffering and physical impairment—was Dr. Bartholomew's testimony that Favalora was "very depressed." Although the words "very depressed" can imply more than mere worry, anxiety, embarrassment, or anger, we must look at the totality of the circumstances as well as the words used. *See Carey*, 894 S.W.2d at 58. Here, the doctor's conclusions—that Favalora was very depressed and could look forward to a bleak future unless he received psychiatric treatment—are not specific evidence of the lasting nature, severity, and duration of Favalora's future mental anguish. *See Gonzalez v. Temple-Inland Mortg. Corp.*, 28 S.W.3d 622, 626 (Tex. App.—San Antonio 2000, no pet.) ("Testimony in support of mental anguish

---

[2] *See also Adams*, 265 S.W.3d at 917 (upholding award for future mental anguish when evidence showed that child who was sexually assaulted was using denial as a coping mechanism, would experience poor performance in school, wrote a letter expressing intense anger and resentment, had angry outbursts, and expert testimony indicated that he would more than likely face other emotional issues in the future); *Finley*, 428 S.W.3d at 235 (evidence was sufficient to support future mental anguish award when evidence showed that cognitively disadvantaged 21-year-old man who was sexually assaulted by pastor felt like a whore, could not sleep, had trouble maintaining employment, and, in light of *Fifth Club*, the trier of fact could have considered the traumatic nature of the assault); *Inst. for Rehab. & Research*, 234 S.W.3d at 18 (evidence was sufficient to support award of future mental anguish damages when evidence showed brain-injured plaintiff who was sexually assaulted by another brain-injured patient felt dirty, was embarrassed, could not speak, feared going to sleep, apologized for not stopping the assault, was incapable of treatment through traditional counseling or therapy, and, among other things, would continue to remember the assault more in the future as her memory improved); *Gen. Motors Corp. v. Burry*, 203 S.W.3d 514, 552–53 (Tex. App.—Fort Worth 2006, pet. denied) (upholding award of future pain and mental anguish when evidence showed severely brain-damaged woman cursed at her children, suffered a lapse in rehabilitation upon her discovery that she was home, and was aware that she did not have the mind she once had, asking her husband, "When is the nightmare going to end?"); *Schindler Elevator Corp. v. Anderson*, 78 S.W.3d 392, 412 (Tex. App.—Houston [14th Dist.] 2001, judgment vacated w.r.m.) (upholding award for future mental anguish when evidence indicated that child whose foot was "degloved" in an escalator would have to undergo further surgeries that would, according to the psychologist, entail fear, emotional problems, and pain), *disapproved of on other grounds, Roberts v. Williamson*, 111 S.W.3d 113 (Tex. 2003).

damages must provide specific details of the nature, duration, and severity of the mental anguish. Conclusory statements are not sufficient."). We conclude the evidence is legally insufficient to support the jury's award of future mental anguish damages.

In sum, the evidence was legally sufficient to support the jury's finding of past mental anguish. However, the evidence was not sufficient to demonstrate a reasonable probability that Favalora would suffer compensable mental anguish in the future. Accordingly, we overrule Katy Springs' sub-issue challenging the jury's finding of past mental anguish. We sustain Katy Springs' sub-issue challenging the jury's finding of future mental anguish. *See Lubbock Cnty. v. Strube*, 953 S.W.2d 847, 857 (Tex. App.—Austin 1997, pet. denied).

## C.     Past and Future Physical Impairment

The jury awarded Favalora $19,000 for past physical impairment and $100,000 for future physical impairment. Katy Springs contends the evidence was legally and factually insufficient to support the jury's finding of past and future physical impairment.

Physical impairment, sometimes called loss of enjoyment of life, encompasses the loss of the injured party's former lifestyle. *Enright v. Goodman Distrib., Inc.*, 330 S.W.3d 392, 402 (Tex. App.—Houston [14th Dist.] 2010, no pet.). To receive physical impairment damages, the plaintiff must prove that the effect of his physical impairment extends beyond any impediment to his earning capacity and beyond any pain and suffering to the extent that it produces a separate and distinct loss that is substantial and for which he should be compensated. *Schindler Elevator*, 78 S.W.3d at 412. That is, the plaintiff must show that (1) he incurred injuries that are distinct from, or extend beyond, injuries compensable as pain and suffering, loss of earning capacity, or other damage elements and (2)

23

these distinct injuries have had a "substantial" effect. *Burry*, 203 S.W.3d at 554–55. If other damage elements such as pain, suffering, mental anguish, and disfigurement are submitted, then there is little left for which to compensate under the category of physical impairment other than loss of enjoyment of life. *Golden Eagle*, 116 S.W.3d at 772. Awards for physical impairment do not always require egregious injuries. *Rosenboom Mach. & Tool, Inc. v. Machala*, 995 S.W.2d 817, 824 (Tex. App.—Houston [1st Dist.] 1999, pet. denied).

Here, Favalora testified that after his injury he could not help care for his ex-girlfriend's daughter. He explained that he could no longer work out or engage in other physical activities he had enjoyed in the past. Dr. Bartholomew testified that as a result of the double-fusion surgery, Favalora would lose between fifteen and thirty percent of the range of motion in his neck. According to the doctor, this loss of range of motion would make simple tasks, such as descending a staircase, difficult because Favalora will not be able to move his head enough to see his feet. Additionally, Favalora will be unable to lift heavy weights, which will necessarily curtail his ability to work out, an activity he enjoyed before the accident. After reviewing the entire record and given the lack of evidence to the contrary, we conclude this evidence is legally and factually sufficient to support the jury's finding of past and future physical impairment. *See, e.g.*, *Plainview Motels, Inc. v. Reynolds*, 127 S.W.3d 21, 39 (Tex. App.—Tyler 2003, pet. denied) (upholding award for future physical impairment where evidence showed plaintiff's injuries impeded his ability to sleep, run, bicycle, participate in triathlons, and play with his children).[3]

---

[3] *See also City of Laredo v. Limon*, No. 04-12-00616-CV, 2013 WL 5948129, at *5 (Tex. App.—San Antonio Nov. 6, 2013, no pet.) (mem. op.) (upholding award of past and future physical impairment where evidence showed plaintiff could not stand for more than one-half hour or sit for more than two or three hours, and she could no longer dance or garden); *Bell v.*

We sustain Katy Springs' sub-issue relating future mental anguish damages. We overrule the remaining sub-issues in Katy Springs' third issue.

## V.   ADMISSION OF MEDICAL BILLING AFFIDAVITS

In its fourth issue, which pertains to the trial court's admission of medical billing affidavits, Katy Springs raises the following sub-issues:

(1)   The trial court erroneously admitted evidence of the full amounts charged by Favalora's medical providers rather than the discounted amounts the medical providers received from MedStar Funding.

(2)   The affidavits submitted by Favalora do not comply with section 18.001 of the Texas Civil Practice and Remedies Code.

(3)   The trial court erred in refusing to allow Katy Springs to conduct

---

*Castro*, No. 04-11-00927-CV, 2012 WL 5874322, at *3 (Tex. App.—San Antonio Nov. 21, 2012, no pet.) (mem. op.) (upholding award for future physical impairment where evidence showed plaintiff would be immobilized for weeks after surgery, would suffer a ten percent total body impairment, and would be restricted from lifting anything heavier than 10-15 pounds); *Belford v. Walsh*, No. 14-09-00825-CV, 2011 WL 3447482, at *9 (Tex. App.—Houston [14th Dist.] Aug. 9, 2011, no pet.) (mem. op.) (upholding finding of zero damages for future physical impairment when one expert opined that plaintiff's lumbar surgery resolved problems with his legs and the cervical surgery resolved problems with arms); *Rentech Steel, L.L.C. v. Teel*, 299 S.W.3d 155, 166 (Tex. App.—Eastland 2009, pet. dism'd) (upholding award for physical impairment where evidence showed plaintiff whose hands were "degloved" would not be able to open a water bottle, button his shirt, write, use a computer with more than two fingers, or throw or catch a baseball or football); *J. Wigglesworth Co. v. Peeples*, 985 S.W.2d 659, 666 (Tex. App.—Fort Worth 1999, pet. denied) (upholding award for physical impairment where evidence showed plaintiff would not be able to do activities as quickly and would suffer the following day; plaintiff testified that he could not participate in motocross, work on his car, or do anything strenuous, including his job as an electrician); *Peter v. Ogden Ground Servs. Inc.*, 915 S.W.2d 648, 650 (Tex. App.—Houston [14th Dist.] 1996, no writ) (upholding finding of zero damages for past and future physical impairment where evidence indicated that plaintiff's prognosis was "very good" if he had surgery, and plaintiff failed to produce evidence that he would be impaired following surgery); *Dodge v. Watts*, 876 S.W.2d 542, 545 (Tex. App.—Amarillo 1994, no writ) (op. on reh'g) (upholding award when evidence showed plaintiff could no longer pick up her grandchildren or clean her house); *Allen v. Whisenhunt*, 603 S.W.2d 242, 244 (Tex. App.— Houston [14th Dist.] 1980, writ dism'd) (upholding award for physical impairment where evidence showed plaintiff could no longer mow the lawn, play basketball, or engage in manual labor, thus affecting his future employment prospects as well as his ability to engage in activities for his own enjoyment).

25

pretrial discovery for the purpose ascertaining the accuracy of the amounts stated in the billing records.

(4) The trial court erred in allowing Favalora to submit duplicative evidence of his medical bills.

(5) The trial court erred in striking Katy Springs' section 18.001 counter-affidavit.

We consider each of Katy Springs' sub-issues in turn.

## A. Medical Bills "Actually Paid or Incurred"

During the pretrial and trial stages of this case, the parties engaged in an ongoing dispute concerning the evidence of Favalora's medical bills. During the discovery process, Katy Springs learned that several of Favalora's medical providers had sold, at a discount, accounts receivable to MedStar Funding, a company engaged in the business of accounts receivable financing, also known as "factoring."[4] Katy Springs now claims the trial court erred in admitting invoices showing the full amounts charged by the medical providers rather than the amounts the medical providers received in return for selling their accounts receivable to MedStar. Citing section 41.0105 of the Civil Practice and Remedies Code, the Texas Supreme Court's decision in *Haygood v. De Escabedo*, 356 S.W.3d 390 (Tex. 2011), and this court's decision in *Metropolitan Transit Authority v. McChristian*, 449 S.W.3d 846 (Tex. App.—Houston [14th Dist.] 2014, no pet.), Katy Springs contends that a plaintiff's recovery is limited to the amount that the

---

[4] Factoring is a process by which a business sells to another business (the "factor"), at a discount, its right to collect money before the money is paid. *Hous. Lighting & Power Co. v. City of Wharton*, 101 S.W.3d 633, 636 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). Factoring is a financing tool that reduces the amount of working capital a business needs by reducing the delay between the time of sale and the receipt of payment. *Id.*; *see also Plotkin v. Joekel*, 304 S.W.3d 455, 465 n.3 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *Al Gailani v. Riyad Bank Hous. Agency*, 22 S.W.3d 560, 565 (Tex. App.—El Paso 2000) (citing Tex. Bus. & Com. Code Ann. § 9.502 cmt. 2 (Vernon 1991)), *rev'd on other grounds*, 61 S.W.3d 353 (Tex. 2001); Note, *Policing Accounts Receivable & Inventory Under Modern Factor's Legislation*, 101 U. Pa. L. Rev. 392, 392 (1952) (explaining typical factoring scenarios).

*medical providers* have a right to be paid, which, in this case, is the amount for which MedStar purchased the accounts receivable from the providers.

In response, Favalora argues that section 41.0105, *Haygood*, and *McChristian* have no effect on his recovery. Favalora posits that he incurred the full amount of expenses billed by his medical providers because MedStar, which purchased the accounts receivable, is legally entitled to recover the full amount of the charges billed, and he is contractually obligated to pay the full amount to MedStar. Favalora contends MedStar is a contractual assignee that stands in the shoes of its assignor—in this case, the medical providers.

Section 41.0105 provides: "In addition to any other limitation under law, recovery of medical or health care expenses incurred is limited to the amount actually paid or incurred by or on behalf of the claimant." Tex. Civ. Prac. & Rem. Code Ann. § 41.0105 (West 2015). The Texas Supreme Court construed this provision in *Haygood* and held that "this statute limits recovery, and consequently the evidence at trial, to expenses that the [medical] provider has a legal right to be paid." 356 S.W.3d at 391. In *Haygood*, a personal-injury case arising from a car accident, twelve health care providers billed Haygood a total of $110,069.12. Because Haygood was covered by Medicare Part B and pursuant to federal law prohibiting providers from charging patients more than Medicare deemed reasonable, Haygood's health care providers adjusted their bills downward, leaving a total amount due of $27,739.43. The trial court allowed Haygood to introduce evidence of the full amounts billed by his providers, and the jury awarded the full amounts as past medical expenses. The court of appeals reversed. *Id.* at 392. In affirming the court of appeals, the Texas Supreme Court first concluded that the collateral source rule, which precludes a reduction in a tortfeasor's liability because of benefits received by the plaintiff from someone else, does not allow a

plaintiff to recover medical expenses that a health care provider is not entitled to charge. *Id.* at 396. Addressing section 41.0105, the court first reasoned that "actually paid and incurred" means "expenses that have been or will be paid, and excludes the difference between such amount and charges the [medical] service provider bills but has no right to be paid." *Id.* at 397. Accordingly, the court held that section 41.0105 "limits a claimant's recovery of medical expenses to those which have been or must be paid by or for the claimant." *Id.* at 398. The court next considered whether the evidence showing the full amounts billed by the health care providers was nonetheless admissible. Because a claimant cannot recover medical expenses that the medical provider is not entitled to be paid, the court reasoned that evidence of such medical expenses is irrelevant to the issue of damages and that the probative value of the evidence is substantially outweighed by the confusion it is likely to generate. *Id.* Therefore, only evidence of recoverable medical expenses is admissible at trial, where "recoverable medical expenses" means those expenses that "have been or must be paid by or for the claimant." *Id.* at 398–399.

The factual situation before us does not fit neatly into section 41.0105 or the *Haygood* court's ruling. However, the Dallas Court of Appeals' decision in *Big Bird Tree Service v. Gallegos*, 365 S.W.3d 173 (Tex. App.—Dallas 2012, pet. denied), is informative. In *Gallegos*, an indigent plaintiff received valuable medical services from Parkland Hospital free of charge. 365 S.W.3d at 175. To prove his reasonable and necessary medical expenses, the plaintiff relied on affidavits with attached billing records from UT Southwestern and Parkland hospitals. The amounts charged totaled $67,699.41 and $16,659.50 respectively. The jury awarded the plaintiff damages, including those incurred at Parkland. The defendant argued on appeal that the evidence was legally and factually insufficient to support the award of expenses for services received at Parkland because the plaintiff

28

received the services free of charge. *Id.* In an offer of proof, Parkland's custodian of records testified that if Parkland discovered that the patient was able to pay for the services, then the patient would be billed for the services. *Id.* at 175–76. The evidence therefore indicated that the plaintiff would be required to pay if he were to obtain a recovery in a lawsuit or otherwise acquire the funds.

The Dallas court distinguished *Haygood*. First, the court noted that there was no evidence of any contract that would have prohibited the hospitals from charging the plaintiff for the full value of the services rendered. *Id.* at 177. Second, the court emphasized that the plaintiff remained liable for the services rendered if he were to recover the funds by other means. *Id.* The court then concluded that section 41.0105 did not preclude the plaintiff from recovering. *Id.*

The facts of this case are similar to those of *Gallegos*. Favalora is uninsured and received valuable medical services. At the time of trial, Favalora had not paid for those services. He testified to owing in excess of $200,000 in medical expenses. The evidence attached to the parties' respective motions on this issue, which the trial court considered in rendering its decision, shows that Favalora entered into contracts with several of his health care providers. Pursuant to these contracts, Favalora assigned to the health care providers his interest in any proceeds that might be recovered as a result of his pending lawsuit. Favalora also granted the providers a security interest in his potential tort recovery. MedStar then purchased, at a discount, the health care providers' accounts receivable, including the providers' respective interests in the potential tort recovery and the liens on those interests. Just as in *Gallegos*, there is no evidence of any contract that prohibited the health care providers from charging Favalora the full value of the services rendered. Nor is there any evidence of a contract prohibiting MedStar from collecting the full value of the services rendered. To the contrary, the

evidence considered by the trial court suggests that Favalora remained liable for the full value of the services rendered.

The fact that the indigent plaintiff in *Gallegos* received the services free of charge from a charitable organization does not change our conclusion that the objected-to evidence was admissible. The evidence here, as in *Gallegos*, indicates that the expenses must be paid by Favalora. Therefore, we cannot conclude that MedStar, by way of the medical providers, was not entitled to recover the full value of the services rendered. *See Gallegos*, 365 S.W.3d at 177; *see also Cash v. Celadon Trucking Servs., Inc.*, No. 4:13-CV-461, 2014 WL 1381394, at *2 (S.D. Tex. Apr. 7, 2014) (unpublished memorandum and order; finding erroneous defendant's interpretation of section 41.0105 that would limit plaintiff's recovery to amount paid by factor). Consequently, the evidence showing the full value of the services received by Favalora was admissible. *See Haygood*, 356 S.W.3d at 399.

Katy Springs has pointed out the following sentence from this court's opinion in *McChristian*: "A tortfeasor is not liable for medical expenses that the claimant is not required to *pay to the provider* because allowing such a recovery would bestow a windfall." 449 S.W.3d at 852 (emphasis added); *see also Haygood*, 356 S.W.3d at 397 ("[A] tortfeasor is not liable to a health care provider or its patients for medical expenses the patients were not required *to pay the provider*." (emphasis added)). Focusing on the phrase "pay to the provider," Katy Springs reasons that if the medical provider is no longer entitled to be paid, then the claimant cannot recover the full amount of the medical expenses from the tortfeasor but must settle for the discounted amount received by the provider. According to Katy Springs, because Favalora's medical providers were paid, albeit by a third party that purchased the right to collect the outstanding accounts receivable, Favalora cannot recover the full amount from Katy Springs. We reject

Katy Springs' position, and we conclude that its reliance on *Haygood and McChristian* is misplaced because those cases involved distinguishable circumstances.

The circumstances here involve a factoring arrangement; *Haygood* and *McChristian* did not. *Haygood* addressed section 41.0105's applicability to expenses for necessary medical care charged by health care providers who set charges at a higher level but agreed to be reimbursed by insurers at a lower level deemed to be reasonable based on "customary charges for similar services and prevailing charges in the same locality for similar services." *Haygood*, 356 S.W.3d at 392 & n.7. *McChristian* addressed section 41.0105's applicability to expenses for necessary medical care that were provided to an uninsured plaintiff. *McChristian*, 449 S.W.3d at 854. "As the supreme court explained, section 41.0105 addresses the difficulty in determining reasonable expenses for necessary medical care when '[h]ealth care providers set charges they maintain are reasonable while agreeing to reimbursement at much lower rates determined by insurers to be reasonable, resulting in great disparities between amounts billed and payments accepted.'" *Id*. (quoting *Haygood*, 356 S.W.3d at 391). This case does not require us to address the disparity between higher charges set by medical providers and lower "reasonable" reimbursement rates set by insurers.

This situation, in contrast, involves medical expenses that Favalora is contractually obligated to pay in full. MedStar is the contractual assignee of Favalora's medical providers. Katy Springs' position ignores the longstanding principle that "an assignee under Texas common law stands in the shoes of his assignor." *See Sw. Bell Tel. Co. v. Marketing on Hold Inc.*, 308 S.W.3d 909, 920 (Tex. 2010). In so doing, the assignee "receives the full rights of the assignor." *Jackson v. Thweatt*, 883 S.W.2d 171, 174 (Tex. 1994). Because MedStar holds

contractually valid assignments, MedStar "steps into the shoes" of the medical providers and is considered under the law to "have the same ability to pursue the claims" of the medical providers. *See Marketing on Hold*, 308 S.W.3d at 916. Therefore, under Texas law and by virtue of the assignments, MedStar and the medical providers are one and the same for purposes of determining the admissibility of evidence under section 41.0105 and *Haygood*.

In a factoring case, where the record indicates that the claimant remains liable for the amounts originally billed by the medical provider, such amounts are recoverable medical expenses under section 41.0105, and evidence showing the amounts billed by the medical provider is admissible. Accordingly, we overrule this sub-issue.

**B.      Compliance with section 18.001, Civil Practice & Remedies Code**

Katy Springs next contends Favalora's Exhibits 39, 41, 43, 49, 51, 52, 53, and 60 do not comply with section 18.001 of the Civil Practice and Remedies Code.

Section 18.001 is "purely procedural, providing for the use of affidavits to streamline proof of the reasonableness and necessity of medical expenses." *Haygood*, 356 S.W.3d at 397.

> [A]n affidavit that the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service was necessary is sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary.

Tex. Civ. Prac. & Rem. Code Ann. § 18.001(b) (West 2015).

> The affidavit must:
> (1) be taken before an officer with authority to administer oaths;
> (2) be made by:

(A) the person who provided the service; or

(B) the person in charge of records showing the service provided and charge made; and

(3) include an itemized statement of the service and charge.

*Id.* § 18.001(c). In other words, to comply with section 18.001, an affidavit must: (1) state that the amount charged was reasonable; (2) state that the service was necessary; (3) be taken before an officer with authority to administer oaths; (4) be made by the provider or the person in charge of the records showing the service provided; and (5) include an itemized statement of the service and charge. *See id.* § 18.001; *see also id.* § 18.002 (West 2015) (sample affidavit forms).

Here, the challenged exhibits contain affidavits that comply with all of the section 18.001 requirements. However, Katy Springs has emphasized that Dan Christensen, the person who signed the MedStar affidavit, which the trial court admitted as Exhibit 60, was not a "medical provider" and therefore was not qualified to testify regarding the reasonableness of the charges. Katy Springs mischaracterizes the text of section 18.001, which contains the disjunctive "or" between the phrase, "the person who provided the service," and the phrase, "the person in charge of records showing the service provided and charge made." Katy Springs has not identified, and we have not found in the record, any evidence suggesting that Christensen is not the person in charge of the records showing the services provided. In fact, the evidence considered by the court in making its evidentiary rulings suggests the opposite. The contracts between MedStar and the service providers explicitly made MedStar the custodian of the pertinent records.

We overrule this sub-issue.

## C. Refusal to Permit Pretrial Discovery on MedStar

Katy Springs contends the trial court erred in "refusing to allow pretrial

discovery necessary for [it] to verify the accuracy of amounts stated in medical billing affidavits submitted by [Favalora.]" This statement constitutes the entirety of Katy Springs' argument regarding the trial court's decision on Katy Springs' request for additional discovery. Katy Springs has not cited to any legal authority for the appropriate standards on discovery error. Nor has it cited to authority or explained how the trial court's error, if any, was harmful. Accordingly, we conclude this issue is inadequately briefed. *See* Tex. R. App. P. 38.1; *Canton-Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 931–32 (Tex. App.—Houston [14th Dist.] 2008, no pet.). By failing to adequately brief this sub-issue, Katy Springs has waived it on appeal. We overrule this sub-issue.

## D.     Admission of Duplicative Affidavits and Medical Bills

Katy Springs contends the trial court erred by admitting multiple affidavits for the same medical expenses. Specifically, Katy Springs claims that some charges are covered by both an affidavit from the medical provider and the affidavit submitted by MedStar's Christensen. Our review of the record confirms Katy Springs' claim that some of the medical bills were submitted twice. For example, in Exhibit 39, Nicole Lilly testified by affidavit on behalf of TOPS Surgical Hospital that Favalora still owed $11,482.97. Lilly attached an itemized bill to her affidavit. Christensen attached the same itemized bill to the MedStar affidavit, which was admitted as Exhibit 60. We conclude, however, that the trial court's error, if any, was harmless.

The admission and exclusion of evidence are within the sound discretion of the trial court. *Bayer Corp. v. DX Terminals, Ltd.*, 214 S.W.3d 586, 609 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). The complaining party must show that the trial court erred and that the error probably resulted in an improper judgment, which usually requires a showing that the judgment turned on the

34

challenged evidence. *Id.*

The evidence in this case indicates that the jury did not consider the duplicated bills when it determined the amount of past medical expenses to award Favalora. The jury awarded Favalora $204,627.02 for past medical expenses. The following table shows the total amounts Favalora owed for medical services and excludes the amount attested to by Christensen in the MedStar affidavit:

| Exhibit No. | Affiant & Medical Provider | Amount |
|---|---|---|
| 24 | Pamela Rodriguez, Phoenix EMS, Inc. | $525.00 |
| 26 | Robert Cotie, Memorial Hermann Katy Hospital | $15,902.25 |
| 27 | Esther Bertschi, ACS Primary Care Physicians | $890.00 |
| 29 | Beatriz Hernandez, Scott Shepherd, M.D. | $939.00 |
| 31 | Samantha Peres, One Step Diagnostic | $6,180.00 |
| 33 | Theresa Gonzalez, Omar D. Vidal, M.D., PLLC | $3,138.00 |
| 35 | Sergio Pachuca, Memorial MRI & Diagnostic | $3,200.00 |
| 37 | Char Butler, Centurion | $4,850.00 |
| 39 | Nichole Lilley, TOPS Surgical Hospital | $11,482.97 |
| 41[A] | Nanda Wright, KSF Orthopaedic Center | $373.00 |
| 41B | Nanda Wright, KSF Orthopaedic Center | $350.00 |
| 41C | Nanda Wright, KSF Orthopaedic Center | $175.00 |
| 41D | Nanda Wright, KSF Orthopaedic Center | $289.00 |
| 41E | Nanda Wright, KSF Orthopaedic Center | $740.00 |
| 41F | Nanda Wright, KSF Orthopaedic Center | $175.00 |
| 43 | Nancy Sattin, South Loop MRI LP | $2,973.00 |
| 45 | Esmerelda Reguigure, Dr. David Wyatt, M.D. | $573.00 |
| 49 | Tina Doss, Bradley J. Bartholomew, M.D. | $30,749.00 |
| 51 | Angie Maher, Omega Hospital | $110,137.00 |
| 52 | Anthony Gettys, Parish Anesthesia Ambulatory, LLC | $3,250.00 |
| 53 | Warren Roesch, Warren Roesch, R.N., F.A. | $5,720.80 |
| 55 | Sandra Lee, Bayou Anesthesia | $1,085.00 |
| 56[A][5] | Jill Bosch, Walgreens Pharmacy | $1,376.92 |
| 56[B] | Jill Bosch, Walgreens Pharmacy | $1,260.60 |

[5] Exhibit 56 contains multiple affidavits with attached documentation showing the price Favalora paid for prescriptions. Katy Springs has not asserted any challenge to these affidavits or the amounts charged for the prescriptions.

| 56[C] | Kate Bates, Target Pharmacy | $37.99 |
|---|---|---|
| 56[D] | Heather Becker, CVS Pharmacy | $506.60 |
| 56[E][6] | Heather Becker, CVS Pharmacy | — |
| 56[F][7] | Heather Becker, CVS Pharmacy | — |
| 56[G] | Pamela T. Caro, CVS Pharmacy | $421.20 |
| 56[H][8] | Katherine Sayles, QVL Pharmacy | $601.26 |
| **TOTAL** | | **$207,901.59** |

Based on our calculations, the evidence was sufficient to support an award of $207,901.59. The jury awarded only $204,627.02. Because the jury's damages award is supported by a calculation and evidence not related to the medical bills attached to Christensen's affidavit, we conclude the trial court's error, if any, in admitting duplicative medical bills was harmless. *See* Tex. R. App. P. 44.1; *Bayer Corp.*, 214 S.W.3d at 609; *Gulftide Gas Corp. v. Cox*, 699 S.W.2d 239, 244 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). Accordingly, we overrule this sub-issue.

E.     **Counter-affidavit of Dr. Steiner**

In footnote five of its appellant's brief, buried within its assertions about the trial court's failure to permit additional discovery, Katy Springs states:

By filing a CPRC 18.001 counter-affidavit, the non-offering party can prevent the offering party's affidavits of reasonableness and necessity from being used as evidence and force the offering party to prove reasonableness and necessity by expert testimony. *Hong* [*v. Bennett*], 209 S.W.3d [795,] 801 [(Tex. App.—Fort Worth 2006, no pet.)]. Realizing the trial court was not going to allow Defendant the discovery necessary to investigate the reasonableness and necessity of

---

[6] The charges in Exhibit 56[E] are identical to the charges in Exhibit 56[D].

[7] The charges in Exhibit 56[F] are identical to the charges in Exhibit 56[D].

[8] Exhibit 56[H] was supported by three prescription billing reports. The second report contained charges that occurred before the accident. The first and third reports were generated on different dates but showed identical charges. Therefore, we counted only the first billing report.

all the medical services provided to Plaintiff [Favalora], Defendant [Katy Springs] nevertheless filed on October 4, 2013, a CPRC 18.001 controverting affidavit of Martin Roth Steiner, MD challenging the necessity of the surgery performed on Plaintiff by Dr. Bartholomew. (SCR-Vol. 13, pg. 5139). Plaintiff filed a Motion to Strike Counter-Affidavits of Martin Steiner, M.D. on November 5, 2013. (SCR-Vo. 13, pg. 5253). The court granted Plaintiff's motion. (RR-Vol. 5, pgs. 131:19-135:22). This issue was preserved for appeal as it was raised in Defendant's Motion for Judgment Notwithstanding the Verdict. (CR-Vol. 1, pg. 110).

To the extent Katy Springs raises an issue here, it is inadequately briefed. Katy Springs has the burden to present and discuss its assertions of error in compliance with the appellate briefing rules. *Cruz v. Van Sickle*, 452 S.W.3d 503, 511 (Tex. App.—Dallas 2014, pet. filed). "It is not this court's duty to review the record, research the law, and then fashion a legal argument for appellant when [it] has failed to do so." *Canton-Carter*, 271 S.W.3d at 931–32; *see Cruz*, 452 S.W.3d at 511 ("We have no duty, or even right, to perform an independent review of the record and applicable law to determine whether there was error."). Katy Springs did not cite any legal authority or provide any analysis applying the appropriate legal authority to the facts of its case in such a manner as to demonstrate the trial court committed reversible error when it excluded the counter-affidavit. *See Canton-Carter*, 271 S.W.3d at 931.

Even if this issue were adequately briefed, Katy Springs waived any error for appellate review. If a party does not challenge all possible grounds for a trial court's ruling that sustains an objection to evidence, then the party waives any error for appellate review. *See Gulley v. Davis*, 321 S.W.3d 213, 218 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). In his motion to strike the counter-affidavit, Favalora challenged Dr. Steiner's qualifications and argued that the affidavit was conclusory. At trial, when the parties were discussing admission of the counter-

affidavit, Favalora's counsel emphasized Dr. Steiner's lack of qualifications. The trial court granted Favalora's request to strike the counter-affidavit but did not explicitly state the grounds on which it did so. Katy Springs has not addressed on appeal either of Favalora's contentions below—i.e., that the counter-affidavit is conclusory or that Dr. Steiner is not qualified. Because Katy Springs failed to challenge on appeal all the possible grounds for the trial court's ruling, Katy Springs has waived error with respect to the trial court's striking of Dr. Steiner's counter-affidavit. *See id.* Accordingly, we overrule this sub-issue.

Having overruled each of the sub-issues, we overrule Katy Springs' fourth issue in its entirety.

## VI.    IMPROPER JURY ARGUMENT

In its fifth issue, Katy Springs complains that Favalora's counsel's jury argument was improper.

Katy Springs first argues that counsel's statements calling for the jury to punish the defendant, and ostensibly to award punitive damages, were improper. Katy Springs identifies two instances of this type of argument. In the first, Favalora's counsel stated, "You have to decide whether that's what we want in our workplace, especially industrial - - ". Katy Springs objected, and the court sustained the objection. Favalora's counsel then changed the subject of his argument. In the second instance, Favalora's counsel stated:

> Imagine yourself walking past the Katy Spring factory and you look in the window and you see a worker having trouble with a dangerous machinery. You watch his supervisor tell his supervisor the worker is not picking it up. You watch the shop superintendent see the same thing. Imagine you see the coil come out, before the time it happened with Joseph, in a dangerous way. Imagine that you see Joseph in a meeting with his boss, telling him, I understand what you're saying. I'm trying. I don't get it. Imagine that the boss says, Do it, or you're

38

fired. If you've got to run to the bathroom, you run to the bathroom and back. Imagine those things are true. What do you do? Do you give him a pass and walk past the door? Do you knock on the door lightly and ask for a donation, hoping that they learned something from it? Or do you kick in the door and you take it, hoping that it acts as a symbol for what they have done?

Katy Springs complains about the last sentence referring to "kick[ing] in the door." At trial, Katy Springs objected to these statements and asked the trial judge for a limiting instruction. The trial court complied, sustaining the objection and instructing the jury as requested.

Katy Springs also complains about argument referring to the lack of evidence of Favalora's drug abuse problems. The thrust of the argument here is that Katy Springs had evidence of Favalora's drug abuse; the court just failed to admit it. Katy Springs objected. Then, in violation of a motion in limine and in front of the jury, Katy Springs' counsel referred to the heroin evidence that the trial court had previously excluded. The court then held a bench conference off the record. After the bench conference, Favalora's counsel continued his argument but did not mention the drug issue again.

Finally, Katy Springs complains about Favalora's counsel's reference to a trial setting that took place several months before the trial. Katy Springs argues that this gave the jury the impression another trial had taken place. The reference occurred in close temporal proximity to the argument regarding Favalora's drug problems. An off-the-record conference was held after Katy Springs' counsel objected. After the conference, Favalora's counsel continued his argument but did not mention the previous trial setting.

On appeal, Katy Springs contends only that the complained-of jury arguments were incurable. A jury argument is "incurable" when it is so prejudicial

or inflammatory that an instruction to disregard cannot eliminate the harm. *Clark v. Bres*, 217 S.W.3d 501, 509 (Tex. App.—Houston [14th Dist.] 2006, pet denied). To show an argument is incurable, the complainant must prove: (1) an improper argument was made; (2) that was not invited or provoked; (3) that was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the trial; and (4) that by its nature, degree, and extent, constituted reversibly harmful error based on an examination of the entire record to determine the argument's probably effect on a material finding. *Id.* We will consider factors such as whether the argument was repeated or abandoned and whether there was cumulative error. *Id.* The complainant must show the probability that the improper argument caused harm is greater than the probability that the verdict was grounded on proper proceedings and evidence. *Id.*

Improper jury argument results in incurable harm only in rare instances, such as an appeal to racial prejudice, calling someone a liar or a fraud, or by making an unsupported charge of perjury. *UMLIC VP LLC, v. T & M Sales & Envtl. Sys., Inc.*, 176 S.W.3d 595, 617 (Tex. App.—Corpus Christi 2005, pet. denied). The argument must be so inflammatory as to strike at the heart of the adversarial process, must appeal to fundamental prejudices, or be sufficiently prejudicial to cause a juror of ordinary intelligence to agree to a verdict contrary to one which he would have agreed to but for the argument. *Dunn v. Bank-Tec S.*, 134 S.W.3d 315, 323 (Tex. App.—Amarillo 2003, no pet.). For instance, a jury argument comparing a nursing home to the Nazis who experimented on and killed humans was incurable. *Living Ctrs. of Tex., Inc. v. Peñalver*, 256 S.W.3d 678, 681–82 (Tex. 2008). A jury argument stating that the plaintiff, who was from south Asia, had committed "judicial terrorism" was incurable when coupled with an unsupported reference to "cultural issues" in the case. *Showbiz Multimedia, LLC v.*

*Mountain States Mortg. Ctrs., Inc.*, 303 S.W.3d 769, 771–72 (Tex. App.—Houston [1st Dist.] 2009, no pet.). On the other hand, a jury argument comparing the defendants in a negligence case to onlookers who did nothing during the savage beating of a slave was not incurable. *4Front Eng'red Solutions, Inc. v. Rosales*, — S.W.3d —, No. 13-13-00655-CV, 2015 WL 1182462, at *25–26 (Tex. App.—Corpus Christi Mar. 12, 2015, pet. filed).

None of the arguments made by Favalora's counsel involve appeals to racial prejudice, extreme or personal attacks on the opposing party, unsupported charges of perjury, or inflammatory epithets. The alleged improprieties do not rise to the level of incurable argument. *See PopCap Games, Inc. v. MumboJumbo, LLC*, 350 S.W.3d 699, 721 (Tex. App.—Dallas 2011, pet. denied); *see also McChristian*, 449 S.W.3d at 855–56 (reference to "snake oil" was not incurable). Accordingly, we overrule Katy Springs' fifth issue.

## VII. EXCLUSION OF DRUG EVIDENCE & DENIAL OF MOTIONS TO REOPEN EVIDENCE & FOR MISTRIAL

Because they both relate to the trial court's decision to exclude evidence of Favalora's past drug use, we consider Katy Springs' sixth and eighth issues together. Katy Springs complains in its sixth issue that the trial court erred in excluding evidence of Favalora's past heroin use. Katy Springs offered hospital reports as evidence of specific instances when Favalora was taken to the hospital after allegedly overdosing on heroin. According to Katy Springs, if the court had admitted the evidence, then Katy Springs could have used the evidence to impeach Favalora's credibility.

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Goss v. Hous. Cmty. Newspapers*, 252 S.W.3d 652, 656 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Under Texas Rule of

41

Evidence 608(b), "[e]xcept for a criminal conviction under Rule 609, a party may not inquire into or offer extrinsic evidence to prove specific instances of the witness's conduct in order to attack or support the witness's character for truthfulness." Tex. R. Evid. 608(b). Katy Springs offered extrinsic evidence—the hospital reports—to prove specific instances of Favalora's conduct in order to attack his credibility. This evidence was inadmissible for impeachment purposes. *See, e.g.*, *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 242 (Tex. 2010) (evidence of plaintiff's immigration status was inadmissible under rule 608(b)). The trial court did not abuse its discretion in excluding the evidence.

In its eighth issue, Katy Springs asserts that the trial court erred in denying its Motion to Reopen Evidence and its Motion for Mistrial. Katy Springs' argument on appeal is based on the trial court's improper exclusion of evidence pertaining to Favalora's past abuse of illegal drugs. The question of reopening a case for the purpose of admitting additional evidence is within the sound discretion of the judge. *Word of Faith World Outreach Ctr. Church, Inc. v. Oechsner*, 669 S.W.2d 364, 366 (Tex. App.—Dallas 1984, no writ). The court's decision should not be disturbed absent a clear abuse of discretion. *Id.* Similarly, the trial court's decision to overrule a motion for mistrial is reviewed for an abuse of discretion. *See Tex. Turnpike Auth. v. McCraw*, 458 S.W.2d 911, 913 (Tex. 1970).

Here, Katy Springs sought to introduce the evidence at issue for the purpose of impeaching Favalora. The evidence was not admissible for this purpose. Therefore, we cannot conclude that the trial court abused its discretion in denying Katy Springs' motions. Accordingly, we overrule Katy Springs' sixth and eighth issues.

## VIII. JURY CHARGE ERROR

In its seventh issue, Katy Springs complains that the trial court improperly

included instructions that were not supported by evidence and excluded requested instructions. Katy Springs presents its arguments in six sub-issues.

The entirety of Katy Springs' contentions on the first sub-issue consists of the following:

> The Court improperly excluded the instruction "A corporation and all other persons are equal before the law and must be treated as equals in a court of justice. [sic] Appellant timely objected and presented the Court with the proper instruction[.]

The entirety of Katy Springs' contentions on the third sub-issue consists of the following:

> The Court improperly segregated damage elements in Question No. 2 and should have listed physical pain and mental anguish as one element and not separate elements of damage[.]

The entirety of Katy Springs' contentions on the fourth sub-issue consists of the following:

> The Court improperly excluded Appellant's Requested Instruction No. 1 that the mere occurrence of an even causing injury is not evidence of negligence. Appellant provided case law in support of the inclusion of this instruction and it was particularly important given the multiple questionable versions of the alleged incident given by Appellee[.]

The entirety of Katy Springs' contentions on the fifth sub-issue consists of the following:

> The Court improperly excluded Appellant's Requested Instruction No. 2, which was appropriate as the evidence showed that Appellee was performing the same character of work that he had always done and that other employees were required to do[.[9]]

---

[9] The requested instruction reads as follows: "When, at the time of his injury, the employee was doing the same character of work that he had always done and that other employees were required to do the employer was not negligent."

43

The entirety of Katy Springs' contentions on the sixth and final sub-issue consists of the following:

> The Court improperly excluded Appellant's Requested Instruction No. 3 on mitigation. The evidence at trial supported the inclusion of this instruction and Appellant had preserved the defense.[10]

Katy Springs does not cite any cases in support of its positions on these sub-issues. Nor does Katy Springs analyze how the trial court's error, if any, was harmful. These sub-issues are therefore inadequately briefed. *See* Tex. R. App. P. 38.1(i); *Canton-Carter*, 271 S.W.3d at 931–32; *Haas v. George*, 71 S.W.3d 904, 914 (Tex. App.—Texarkana 2002, no pet.). By failing to adequately brief these sub-issues, Katy Springs has waived them on appeal. Accordingly, we overrule these sub-issues. We turn now to the second sub-issue.

Katy Springs asserts in the second sub-issue that the trial court erred when it included the following instruction:

> You are further instructed that Katy Springs & Manufacturing, Inc. also owed duties to provide rules and regulations for an employee's safety, to furnish safe policies and procedures and to enforce safe policies and procedures.

Katy Springs argues on appeal that the evidence was insufficient to support the inclusion of this instruction:

> [Favalora] provided no evidentiary or legal support the inclusion [sic] of this instruction and there was no evidence adduced at trial that any rule, regulation, policy or procedure was involved in the circumstances surrounding [Favalora's] alleged incident[.]

However, at trial, Katy Springs objected to this instruction on different grounds—

---

[10] The requested instruction reads as follows: "Do not include any amount for any condition resulting from the failure, if any, of Joseph Favalora to have acted as a person of ordinary prudence would have done under the same or similar circumstances in caring for and treating his injuries, if any, that resulted from the occurrence in question."

namely, that the instruction misstated the law and was a comment on the weight of the evidence:

> Judge, in terms of the instruction, it looks like it's going to be Page 4 on the Charge of the Court where there is your instruction to Katy Springs, also duties to provide rules and regulations for an employee safety to furnish said policy and procedures, to enforce - - and to enforce safe policies and procedures, I don't think that's the law. And I think it's a comment on the weight of the evidence, and we would object to that instruction being included.

To preserve error for appeal, the argument made below must match the argument made on appeal. *Wackenhut Corr. Corp. v. De la Rosa*, 305 S.W.3d 594, 616 (Tex. App.—Corpus Christi 2009, no pet.). Here, Katy Springs' arguments do not match. Therefore, Katy Springs preserved nothing for review, and we overrule this sub-issue. *See id.* at 618.

Having overruled each of its six sub-issues challenging the jury charge, we overrule Katy Springs' seventh issue in its entirety.

## IX. CONCLUSION

Because the evidence was insufficient to support the jury's award for future mental anguish, we modify the judgment to delete the $100,000 award for future mental anguish and affirm the trial court's judgment as modified.


/s/    Marc W. Brown
       Justice


Panel consists of Justices Boyce, Brown, and Wise.

45