

# NUMBER 13-17-00691-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**DAVID ATKINSON,** **Appellant,**

**v.**

**SUNCHASE IV HOMEOWNERS
ASSOCIATION, INC. AND BOARD,** **Appellees.**

---

### On appeal from the 404th District Court
### of Cameron County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Hinojosa and Tijerina
Memorandum Opinion by Justice Tijerina**

Appellant David Atkinson appeals from a final judgment in favor of appellees

Sunchase IV Homeowners Association, Inc. and Board (the Association). By six issues,

Atkinson complains of: (1) the trial court's failure to conclude that the utilities at Sunchase

IV must "be paid as a common expense"; (2) the jury's "error in failing to find that repeated, knowing violations of the Sunchase IV governing documents . . . were breaches of contract or fiduciary duty"; (3) the "[t]rial court's failure to rule on limitations on the Sunchase IV board's powers to make changes to Sunchase IV common elements"; (4) the "[t]rial court's failure to rule . . . as a matter of law that non-property lawsuit settlement funds cannot be distributed to unit owners and most especially on a formula on Hurricane Dolly damages negotiated by the Sunchase IV Board"; (5) the granting of attorney's fees to the Association; and (6) "[t]he trial court's failure to find the creation of preferential parking rights violated the parties' prior lawsuit settlement agreement." On February 3, 2020, the Association filed a motion for rehearing, which we deny. However, we withdraw our memorandum opinion and judgment of December 19, 2019, and we substitute the following memorandum opinion and accompanying judgment in their place. We affirm in part and reverse and render in part.

## I.    BACKGROUND

Atkinson owns a condominium unit at Sunchase IV on South Padre Island, Texas. According to Atkinson, the Association is a duly formed nonprofit corporate entity that administers the condominium project pursuant to its Declaration and Bylaws.[1] Atkinson stated in his petition that Hurricane Dolly damaged the Sunchase IV building and his unit in 2008, which required substantial repairs. Atkinson claimed that the Association "discriminated" against him in the disbursement of funds intended to repair hurricane damage. Atkinson accused the Association of "creat[ing] a fraudulent scheme where [the Association's] repair obligations [after Hurricane Dolly] were shifted to individual unit

---

[1] We have summarized Atkinson's allegations as stated by him in his live pleading.

2

owners" which "resulted in the situation where unit owners were excluded from the insurance loss assessments and settlements from related litigation and having to accept whatever insurance monies [the Association] unilaterally decided to give each unit owner." Atkinson alleged that the Association violated its Declaration and Bylaws by improperly "altering" common elements of the Sunchase IV building including "some portions in the interiors of individual units" and by failing to properly repair other common elements of the building. Atkinson claimed that the Association "stole" his electricity by using his air conditioning unit. In addition, Atkinson stated that the Association "surreptitiously with the clear intent to defraud . . . made secretive repair attempts" to his unit "after a common element water pipe located in a common area burst, supposedly, on November 15 of 2011." Atkinson further alleged that after the water leak, the Association allowed maintenance workers to "repeatedly" enter his unit and make inadequate repairs to his unit which they attempted to "hide." Atkinson stated that the Association "removed personal property including family photographs and business documents from [his] unit" and that most of that property was not returned to him. Finally, Atkinson complained that the Association violated the terms of a prior settlement agreement by providing "preferential parking" to certain individuals who have a motorcycle, trailer, or boat.

Atkinson sued the Association for fraud, civil conspiracy, breach of fiduciary duty, breach of contract, negligence, gross negligence, conversion, and trespass. A jury trial was held on Atkinson's claims.[2] At the end of Atkinson's case-in-chief, the trial court

_____

[2] The Association filed a motion for partial summary judgment seeking a declaratory judgment regarding its rights and obligations under the governing documents and under a settlement agreement. The trial court ruled on the Association's declaratory judgment cause in its partial summary judgment, and the jury was not asked to make any determinations regarding the Association's declaratory judgment cause.

3

granted a directed verdict in favor of the Association on Atkinson's claims of negligence, gross negligence, conversion, and civil conspiracy and allowed the remaining claims of trespass, breach of contract, breach of fiduciary duty, and fraud to be submitted to the jury.[3] The jury answered "No" to the following questions: (1) Did the Association "fail to comply with its fiduciary duty to David Atkinson?"; (2) Did the Association "commit a trespass against David Atkinson?"; and (3) Did the Association "breach . . . contractual duties to David Atkinson?"[4] The jury also awarded attorney's fees to the Association. The trial court entered a final take-nothing judgment against Atkinson awarding attorney's fees to the Association. This appeal followed.

## II.    UTILITIES AT SUNCHASE

By his first issue, Atkinson contends that the trial court erred by failing to conclude that the utilities at Sunchase must "be paid as a common expense." Specifically, Atkinson argues that "[a]ppellees must assess and pay, as common element expenses, the Sunchase IV central telephone, cable, and WiFi utilities" because those utilities are non-individually metered; therefore, under the governing documents, those utilities "are common expenses and Sunchase cannot charge each unit, regardless of unit size, the same monthly amount for such non individually metered utilities."[5]

Atkinson generally cites the standards of review for legal sufficiency, construction of contracts, and for the denial of a judgment notwithstanding the verdict. However,

---

[3] Atkinson did not seek a ruling on his breach of settlement agreement assertion.

[4] The trial court did not submit a question regarding Atkinson's fraud claim to the jury.

[5] Atkinson further argues that "[t]he trial court abused its discretion in not enjoining such practices." Atkinson fails to state when he requested the trial court to enjoin the Association from this practice, and he does not provide any citation to pertinent authority supporting his claim that he was entitled to such relief or any legal analysis explaining his assertion. *See* TEX. R. APP. P. 38.1(i).

4

although Atkinson cites evidence, he does not state which standard applies to this issue, and he does not cite to any pertinent authority that supports his first issue. *See* TEX. R. APP. P. 38.1(i). In addition, Atkinson does not make any legal argument regarding how the trial court's alleged failure to conclude that the utilities at Sunchase must "be paid as a common expense" was erroneous in any way or how this alleged error, if any, caused him harm. *See id*. The requirement that the appellant's brief contain a clear and concise argument is not satisfied by merely uttering brief conclusory statements unsupported by legal citations. *Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.). "Failure to cite legal authority or provide substantive analysis of the legal issue presented results in waiver of the complaint." *Id*. We are not allowed to perform an independent review of the record and applicable law to determine whether there was error. *Id*. "It is not this [C]ourt's duty to review the record, research the law, and then fashion a legal argument for appellant when [it] has failed to do so." *Katy Springs & Mfg., Inc. v. Favalora*, 476 S.W.3d 579, 607 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). Accordingly, we conclude that Atkinson has waived this issue.[6] We overrule Atkinson's first issue.

### III. VIOLATIONS OF THE SUNCHASE IV GOVERNING DOCUMENTS

By his second issue, Atkinson contends that the jury's verdict denying his breach

---

[6] In its brief, the Association alleges that Atkinson attempts to challenge the trial court's partial summary judgment in favor of the Association, and it points out that Atkinson has failed to provide a record of that proceeding in this appeal. However, Atkinson does not state in his brief where he requested the trial court to make the above-stated conclusion, when the trial court refused to do so, or the legal significance of the trial court's failure to make a conclusion that the utilities at Sunchase must "be paid as a common expense." *See* TEX. R. APP. P. 38.1(i). In addition, Atkinson denies that there was a summary judgment granted in this cause. And, he acknowledges that he is not challenging the trial court's grant of the partial summary judgment. Therefore, we need not review it as it is not dispositive. *See* TEX. R. APP. P. 47.1.

of fiduciary duty claim was against the great weight of the evidence.[7] We construe this issue as challenging the factual sufficiency of the evidence supporting the jury's finding that the Association did not breach its fiduciary duty. *See Kratz v. Exxon Corp.*, 890 S.W.2d 899, 901–02 (Tex. App.—El Paso, 1994, no writ) (explaining that a complaint that the jury's finding is against the overwhelming weight of the evidence is a factual sufficiency challenge); *see also Spinks v. Brown*, 04-08-00877-CV, 2010 WL 381041, at *1 (Tex. App.—San Antonio Feb. 3, 2010, pet. denied) (mem. op.) (construing the appellant's argument that the jury finding was against the great weight and preponderance of the evidence as a challenge to the factual sufficiency of the evidence (citing *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex.1998))).

## A. Standard of Review

"When a party attacks the factual sufficiency of an adverse finding on an issue on which [it] has the burden of proof, [it] must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam). We must consider and weigh all of the evidence and will only set the verdict aside if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong or unjust. *Id*. In the context of a jury trial, the sufficiency of the evidence is reviewed

---

[7] Specifically, Atkinson argues that the jury should have found that the Association breached its fiduciary duty by (1) "not paying for [his] personal property damages and loss of use damages caused by a Sunchase IV common element water leak in the Fall of 2011"; (2) "failing to provide mold clearance certificates to Atkinson"; (3) "paying non-insurance lawsuit settlement monies to individual unit owners on the basis of purported Hurricane Dolly losses rather than into the condominium's general fund"; (4) "making alterations to common elements without owner or mortgage holder consents"; (5) "entering [his] unit without prior notice and at a time convenient to Atkinson in non-emergency situations"; (6) "not properly paying Atkinson's Hurricane Dolly damages"; (7) "billing Atkinson the same telephone, cable, and WiFi amount as larger units"; (8) and "generally treating Atkinson in a discriminatory fashion."

in the light of the charge submitted if no objection is made to the charge. *Romero v. KPH Consolidation, Inc.*, 166 S.W.3d 212, 221 (Tex. 2005); *Wal–Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 715 (Tex. 2001).

If the evidence at trial "would enable reasonable and fair-minded people to differ in their conclusions," we will not substitute our judgment for that of the fact finder. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). Whether reviewing the legal or factual sufficiency of the evidence, the jurors are the sole judges of the credibility of the witnesses and the weight to be given their testimony and may choose to believe some witnesses and not others. *Id*. at 819. The amount of evidence necessary to affirm is far less than the amount necessary to reverse a judgment. *GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet*, 61 S.W.3d 599, 616 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). Moreover, this Court is not a factfinder. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

## B.    The Charge

In the jury charge, question number one states: "Did [the Association] fail to comply with its fiduciary duty to [Atkinson]?" The trial court instructed the jury as follows:

> Because a relationship of trust and confidence existed between them, as a homeowner association and member, [the Association owed Atkinson] a fiduciary duty. To prove that Sunchase IV Condominiums Homeowner's Association failed to comply with its fiduciary duty David Atkinson must show:
>
> a.    [The Association] did not discharge its duties in good faith; with ordinary care; and in a manner [the Association] reasonably believed to be in the best interest of the condominium project; and
>
> b.    [The Association] did not act within the scope of its authority; and
>
> c.    [The Association] failed to acquire, construct, manage, maintain and keep in good order, condition, and repair all of the General Common

7

Elements and all items of common personal property used by the owners in the enjoyment of the entire premises, except as such duty may be specifically designated herein to each owner.

d.  [The Association] failed in general, to carry on the administration of this Association and to do all of those things necessary and reasonable in order to carry out the governing and the operation of the Condominium Project.

The jury answered, "No."

## C.  Discussion

Although not explicitly stated by Atkinson in his brief, it appears that he specifically attacks the jury's failure to find that the Association acted in bad faith and

failed to acquire, construct, manage, maintain and keep in good order, condition, and repair all of the General Common Elements and all items of common personal property used by the owners in the enjoyment of the entire premises, except as such duty may be specifically designated herein to each owner.

Regarding bad faith, Atkinson argues that "[t]he record is replete with bad faith" and he provides a laundry list of nineteen examples he asserts show that the Association acted in bad faith. However, Atkinson has not cited evidence in the record showing that the Association committed these acts.[8] Moreover, Atkinson does not explain, with citation

---

[8] Atkinson states:

The record is replete with bad faith: non-insurance distributions of money to unit owners based upon past Hurricane Dolly damages negotiated by the Sunchase board; not billing non-individually metered utilities as common expenses; allowing board member Wally Jones to have a storage unit on his balcony; sending an attorney letter to Atkinson complaining that his blinds were visible from the exterior; removing personal property from Atkinson's unit and never returning it; making repairs to the non-common element interior of Atkinson's unit; failing to maintain the project properly; making unilateral alterations to common elements without owner of mortgage holder approval; repeatedly entering Atkinson's unit without notice or at a time convenient to him; not giving studies like Hurricane Dolly mold books to any owner including Atkinson; asking Atkinson to backdate a document one year; failing to reimburse Atkinson for the electricity and use of his air conditioner to dry out Atkinson's unit from the water damage caused by Sunchase itself in November of 2011; replacing insiders' air conditioners in the Fall of 2008 out of insurance money so such insiders were able to move back first while not paying for Atkinson's air conditioner replacement until 2011.

8

to pertinent authority or legal analysis, how these alleged acts by the Association constitute bad faith. Therefore, Atkinson has not shown that the jury's failure to find that the Association acted in bad faith is against the great weight and preponderance of the evidence. *See Dow Chem. Co.*, 46 S.W.3d at 242.

In addition, without an objection to the jury charge, the sufficiency of the evidence must be viewed in light of the jury charge provided. *Romero*, 166 S.W.3d at 221; *Wal-Mart Stores, Inc.*, 52 S.W.3d at 715. Here, the jury charge required that, for Atkinson to prevail on his breach of fiduciary claim, he prove that the Association failed to act within the scope of its authority. *See Romero*, 166 S.W.3d at 221; *Wal-Mart Stores, Inc.*, 52 S.W.3d at 715 (explaining that even though the charge was erroneous, the reviewing court was required to review the evidence in light of the jury charge given by the trial court). However, Atkinson does not argue on appeal that he provided evidence to support such a finding. Again, as previously stated, we do not have a duty to "review the record, research the law, and then fashion a legal argument for appellant when [it] has failed to do so." *Katy Springs & Mfg., Inc.*, 476 S.W.3d at 607. Accordingly, because Atkinson has not demonstrated on appeal that the adverse finding is against the great weight and preponderance of the evidence, *see Dow Chem. Co.*, 46 S.W.3d at 242, we overrule his second issue.

## IV.   ALTERATIONS TO COMMON ELEMENTS

By his third issue, Atkinson contends that the trial court erred by "refusing to rule as a matter of law that [the Association] cannot make alterations to common elements and their intended uses and purposes without mortgage holder consents as such consents are required by Sunchase governing documents." It appears that Atkinson also

9

argues that certain types of alterations could not be made to the common elements without approval from all the unit owners.[9] The Association replies that its governing documents grant authority to the Association to make alterations to the common elements of the building without consent from anyone.

According to the Association's Declaration, common elements include, among other things, gardens, pools, mail rooms, recreational facilities, laundry rooms, parking spaces, foundations, "common dividing walls between two or more Units or between Units and Common Elements," supports, roofs, the grounds, yard, driveways, boiler rooms, mechanical rooms, and storage areas. The Declaration and bylaws make it clear that the Association shall "[m]aintain, repair, replace, restore, operate and manage all of the Common Elements and facilities, improvements, furnishings, equipment and landscaping thereon, and all property that may be acquired by [the Association] in good condition . . . ." The Bylaws further clearly state that the powers and duties of the Association shall include, among other things, "[t]o make repairs, additions, *alterations*, and improvements to the *Common Elements* consistent with managing the Condominium Project in a manner in keeping with the character and quality of the neighborhood in which it is located, the best interest of the owners, and the Declarations and these By-Laws" (emphasis added). There is nothing in the Declaration or Bylaws stating that the Association is required to obtain permission from the unit owners or their mortgagees

---

[9] Atkinson states that "[r]eplacing standard glass with hurricane resistant glass would be a good example of a permissible improvement" while "[c]hanging the theme of a beachfront condominium from an ocean theme to a tropical theme, as done in Sunchase IV, is not a safety measure." Atkinson complains that the Association made alterations to the common elements by changing the color of the paint and states that the Association's "most immediate plan is to destroy what was called a snack area and turn it into a patio area." According to Atkinson, these types of "alterations" must be approved by all the unit owners and their mortgagees.

prior to making repairs, additions, or alterations to the *common elements*.

Although not stated in his brief, to support his argument, Atkinson appears to rely on language in the Declaration stating: (1) "Each Unit Owner shall have as an appurtenance to his Unit, *an undivided percentage interest* in the Common Elements, based upon the approximate size of his Unit in relation to the others . . . ."; and (2) the "Common Interest appurtenant to each Unit is declared to be permanent in character and cannot be altered once sold by Declarant without the consent of all the Owners of said Units and the mortgagees of such Owners."[10] This provision does not state the Association cannot alter the *common elements* without the consent of the unit owners and their mortgagees. Instead, this provision requires consent from all unit owners and their mortgagees for alteration of any *common interest* the unit owners have in the common elements. This provision of the Declaration does not support Atkinson's contention that the trial court should have concluded that the Association needed approval from all the unit owners and their mortgagees to make alterations to the *common elements*. Thus, the bylaws explicitly authorize the Association to alter common elements, and the language quoted above does not conflict with the bylaws. We overrule Atkinson's third issue.

## V.     DISTRIBUTION OF PROCEEDS FROM LITIGATION

By his fourth issue, Atkinson contends that the trial court "erred" by failing to find "as a matter of law . . . under both state statutes and Sunchase IV governing documents that a homeowner's association board cannot distribute the proceeds from litigation (as

---

[10] A common interest is defined in the Declaration as "[t]he proportionate undivided interest in the Common Elements which is appurtenant to each Unit . . . ."

11

opposed to proceeds from insurance settlements or insurance settlement litigation for insured disaster damages) to individual unit owners." Specifically, without citation to the record, Atkinson asserts that proceeds from a lawsuit that resulted from Hurricane Dolly were given by the Association directly to the unit owners and not held in trust.[11] According to Atkinson, this act constituted a breach of contract and "invited unit owners to take the lawsuit money and then sell their units, leaving the expense of paying for unrepaired common elements to be borne by future purchasers of units." Relying on Texas Property Code § 81.104(c), Atkinson claims that "[a] bank account or any funds are clearly owned, pro-rata by unit owners." *See* TEX. PROP. CODE ANN. § 81.104(c) ("The entire interest in the condominium regime shall be divided among the apartments."). He also claims that the Association violated Texas Penal Code § 32.45(7) by misapplying funds. *See* TEX. PENAL CODE ANN. § 32.45 (establishing the offense of misapplication of fiduciary property).

Other than the above-stated bare assertions, Atkinson provides no legal analysis or substantive argument to support this issue. *See* TEX. R. APP. P. 38.1(i). In addition, Atkinson provides no background information regarding the Hurricane Dolly lawsuit or when the funds were allegedly misappropriated. Finally, Atkinson does not state when he asked the trial court to conclude that the Association misappropriated the Hurricane Dolly funds or how the trial court's failure to make such a conclusion caused an improper judgment. We overrule Atkinson's fourth issue.

---

[11] The trial court did not submit a question to the jury regarding the Hurricane Dolly funds, and Atkinson does not explain how the other questions in the charge relate to those funds.

## VI. ATTORNEY'S FEES

By his fifth issue, Atkinson contends that the award of attorney's fees was improper because the fees were not segregated, and the Association is not entitled to them.

### A. Segregation of Attorney's Fees

Error is waived if no one objects to the trial court's failure to segregate attorney's fees as to specific claims. *Green Int'l., Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997). In the trial court, Atkinson did not object to the trial court's failure to segregate the attorney's fees. Therefore, even assuming the trial court erred in failing to require the segregation of attorney's fees, error was waived. *See id*.

### B. Entitlement to Attorney's Fees

Atkinson argues that the Association is not entitled to attorney's fees pursuant to any of the theories it argued to the trial court. The Association responds that it was entitled to attorney's fees pursuant to the Uniform Declaratory Judgment Act (UDJA) and the property code.

#### 1. UDJA

First, Atkinson contends that the Association is not entitled to the award of attorney's fees under the UDJA. Specifically, Atkinson argues that the Association's request for declaratory relief was merely a request for a declaration that Atkinson's claims lack merit. *See Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 624 (Tex. 2011) (per curiam) (concluding that the award of attorney's fees was improper because "[t]he declaratory judgment simply duplicated the issues litigated under" the plaintiff's trespass claim). The Association responds that it was entitled to attorney's fees pursuant to the UDJA because its request for declaratory relief was not merely an improper mirror image

13

of Atkinson's affirmative claims. *BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 841 (Tex. 1990) (orig. proceeding). We agree with Atkinson.

The UDJA provides that in a proceeding brought pursuant to the act, the trial court may award reasonable and necessary attorney's fees that are equitable and just. TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. The trial court has discretion under the UDJA to grant or deny an award of attorney's fees. *Transcont'l Ins. Co. v. Crump*, 330 S.W.3d 211, 231 (Tex. 2010) (citing *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998)); *Schack v. Prop. Owners Ass'n of Sunset Bay*, 555 S.W.3d 339, 360 (Tex. App.—Corpus Christi–Edinburg 2018, pet. denied).

Generally, the UDJA is not available to settle disputes that are already pending in the trial court. *BHP Petroleum Co.*, 800 S.W.2d at 841. "In certain instances, however, a defensive declaratory judgment may present issues beyond those raised by the plaintiff" when a counterclaim seeks a true declaration of an ongoing and continuing relationship and asserts relief having "greater ramifications" than the original suit. *Id.*

Atkinson filed suit for breach of contract, breach of fiduciary duty, fraud, conspiracy, and negligence arising from his ownership of a Sunchase IV condominium unit, which is governed by the Association's Declaration and Bylaws. In his original petition, Atkinson alleged that the Association breached its fiduciary duty and the contract by failing to comply with the "covenants and bylaws owed to condominium unit owners." In response, the Association sought various declarations clarifying its duties and obligations under the Declaration and Bylaws. The declarations sought by the Association relate to Atkinson's claims that it breached its fiduciary duty and breached the contract by failing to comply with those duties. For example, the Association requested a declaration

14

that it had the authority to make alterations to the common elements without seeking the consent of the unit owners in defense to Atkinson's breach of fiduciary duty claim, which merely mirrors Atkinson's claims that the Association was required to seek the consent of the unit owners. In addition, the other declarations requested by the Association were meant merely to negate Atkinson's claims, and the Association would not have had a cause of action independent of Atkinson's claims on which the Association could have recovered benefits, compensation or relief, even if Atkinson had abandoned his claims or failed to establish his claims.[12] *See id.*; *Garden Oaks Maint. Org. v. Chang*, 542 S.W.3d 117, 124 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("To qualify as a claim for affirmative relief, a defensive pleading must allege that the defendant has a cause of action, independent of the plaintiff's claim, on which he could recover benefits, compensation or relief, even if the plaintiff abandons his cause of action or fails to establish it."). Thus, the Association sought a declaratory judgment that depended on Atkinson's claims. Accordingly, we conclude that the Association's counterclaim for declaratory relief therefore did not state a claim for affirmative relief and was not the

---

[12] The Association also sought and received declarations that: (1) Texas Property Code § 82.103 does not apply to it; (2) it was entitled to attorney's fees and costs if it prevailed against Atkinson; (3) it was authorized to issue special assessments to its unit owners for constructing capital improvements to the common elements including fixtures and personal property; (4) "[a]ll Unit Owners, including Atkinson, agreed to pay the special assessments issued by [the Association] for the purpose of constructing capital improvements or unexpected expenses"; (5) it was authorized to issue special assessments against all unit owners including Atkinson "to reimburse the Association for costs [the Association] incurs in bringing that Unit Owner into compliance with the provisions of the Declaration and the By-laws, including actual attorney's fees"; (6) the Association's agents and employees are authorized to enter any unit "without notice in the event of an emergency for any purpose reasonably related to [the Association's] performance of its responsibilities under the Declaration"; (7) the Association's agents and employees are authorized to enter any unit "at any reasonable hour after reasonable notice is given for any purpose reasonably related to [the Association's] performance of its responsibilities under the Declaration"; (8) a settlement agreement entered by the Association and Atkinson did not prohibit the Association from allowing employees to park in the garage and allowing garbage containers or to take measures to prevent the general public from parking within the parking lot.

proper subject of a declaratory judgment. *BHP Petroleum Co.*, 800 S.W.2d at 841. Thus, the trial court abused its discretion in awarding attorney's fees pursuant to the UDJA.

### 2. Property Code

Next, Atkinson argues that, contrary to the Association's argument, the Association was not entitled to attorney's fees pursuant to the property code. In the trial court, the Association argued that if Atkinson did not prevail on his claims, it was automatically entitled to attorney's fees pursuant to § 82.161 of the property code. *See* TEX. PROP. CODE ANN. § 82.161. The trial court agreed with the Association.

Section 82.161of the Texas Property Code, provides:

(a)     If a declarant or any other person subject to this chapter violates this chapter, the declaration, or the bylaws, any person or class of persons adversely affected by the violation has a claim for appropriate relief.

(b)     The prevailing party in an action to enforce the declaration, bylaws, or rules is entitled to reasonable attorney's fees and costs of litigation from the nonprevailing party.

*Id*.

"It is well-settled under Texas law that 'to prevail, a claimant must obtain actual and meaningful relief, something that materially alters the parties' legal relationship.'" *Wheelbarger v. Landing Council of Co–Owners*, 471 S.W.3d 875, 896 (Tex. App.— Houston [1st Dist.] 2015, pet. denied) (citing *Intercont'l Group P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 652 (Tex. 2009); *Farrar v. Hobby*, 506 U.S. 103, 109–10 (1992)). In the context of § 82.161, to qualify as the prevailing party, the Association must have shown that it was adversely affected by a violation of "this chapter, the declaration, or the bylaws" and that it suffered damages or otherwise obtained affirmative relief from the trial court. *See Wheelbarger*, 471 S.W.3d at 896–97 (citing *Buttross V., Inc. v. Victoria*

16

*Square Condo. Homeowners' Ass'n Inc.*, No. 03–09–00526–CV, 2010 WL 3271957, at *3–4 (Tex. App.—Austin Aug. 18, 2010, pet. denied) (mem. op.)).

Instead, the Association only claims it is entitled to attorney's fees because the trial court granted its request for declaratory relief and Atkinson did not prevail on his claims. However,

> [i]n order for a defendant to qualify as seeking affirmative relief in his counterclaim, his pleadings must allege facts which show that he has a cause of action, independently of plaintiff's claim, on which he might proceed to recover benefits, compensation, or relief even though [the] plaintiff abandons his cause of action or fails to establish it.

*Newman Oil Co. v. Alkek*, 614 S.W.2d 653, 655 (Tex. App.—Corpus Christi−Edinburg 1981, writ ref'd n.r.e.); *see Wheelbarger*, 471 S.W.3d at 896–97 (concluding that although the jury found that Wheelbarger was adversely affected by the council's failure to comply with the property code, the bylaws, and declarations, Wheelbarger had not obtained affirmative relief, and therefore, she was not a prevailing party); *Sanchez v. AmeriCredit Fin. Servs., Inc.*, 308 S.W.3d 521, 525 (Tex. App.—Dallas 2010, no pet.) (determining that the declaratory judgment claimant was not the prevailing party and not entitled to attorney's fees because he sought declarations only to avoid liability).

As set out above, the Association only requested declarations to avoid liability from Atkinson's causes of action. It did not seek affirmative relief from Atkinson. As such, the Association was not automatically the prevailing party because it acquired declaratory relief or because Atkinson failed to prevail on his claims. Instead, the Association did not seek affirmative relief, and it was not the prevailing party. Therefore, we conclude that the Association is not entitled to the award of attorney's fees pursuant to property code § 82.161. *See Newman Oil Co.*, 614 S.W.2d at 655; *see also Wheelbarger*, 471 S.W.3d

17

at 896–97; *Sanchez*, 308 S.W.3d at 525. Thus, the trial court abused its discretion in awarding attorney's fees pursuant to § 82.161 of the property code. *See* TEX. PROP. CODE ANN. § 82.161.

We sustain Atkinson's fifth issue.

## VII.    PREFERENTIAL PARKING

By his sixth issue, Atkinson contends "[t]he trial court erred in failing to rule as a matter of law that the admitted creation of preferential parking spaces for permanent residents and commercial renters violated the parties' prior litigation agreement." Atkinson appears to challenge the trial court's refusal to grant an injunction enjoining the Association from allowing preferential parking.[13] This issue is inadequately briefed. *See* TEX. R. APP. P. 38.1(i). We overrule it.

## VIII.    CONCLUSION

We reverse the trial court's judgment as to the award of attorney's fees, render judgment denying the Association's request for such fees, and affirm the trial court's judgment in all other respects.

JAIME TIJERINA,
Justice

Delivered and filed the
30th day of April, 2020.

---

[13] Atkinson does not state where in the record the trial court failed to rule that the alleged preferential parking violated the settlement agreement. In his live pleading, Atkinson alleged in one sentence that the Association breached the settlement agreement by allowing "preferential parking," but the jury charge does not have a question regarding Atkinson's claim for breach of the settlement agreement. In addition, there is nothing in the record showing that Atkinson requested injunctive relief or that the trial court made a ruling regarding the preferential parking. Thus, we are unable to determine which ruling, if any, Atkinson challenges.